## ANDERSON, WARDEN v. CHARLES

No. 79-1377.   Decided June 16, 1980

PER CURIAM.

Respondent Glenn Charles was arrested in Grand Rapids, Mich., while driving a stolen car. The car belonged to Theodore Ziefle, who had been strangled to death in his Ann Arbor home less than a week earlier. The respondent was charged with first-degree murder. At his trial in the Circuit Court of Washtenaw County, Mich., the State presented circumstantial evidence linking the respondent with the crime. The respondent was found with Ziefle's car and some of his other personal property. The respondent also owned clothing like that worn by the man last seen with the victim, and he boasted to witnesses that he had killed a man and stolen

his car.   Police Detective Robert LeVanseler testified that he interviewed the respondent shortly after his arrest.   After giving the respondent *Miranda* warnings, LeVanseler asked him about the stolen automobile.   According to LeVanseler, the respondent said that he stole the car in Ann Arbor from the vicinity of Washtenaw and Hill Streets, about two miles from the local bus station.

The respondent testified in his own behalf.   On direct examination, he stated that he took Ziefle's unattended automobile from the parking lot of Kelly's Tire Co. in Ann Arbor. On cross-examination, the following colloquy occurred:

"Q. Now, this Kelly's Tire Company, that's right next to the bus station, isn't it?

"A. That's correct.

"Q. And, the bus station and Kelly's Tire are right next to the Washtenaw County Jail are they not?

"A. They are.

"Q. And, when you're standing in the Washtenaw County Jail looking out the window you can look right out and see the bus station and Kelly's Tire, can you not?

"A. That's correct.

"Q. So, you've had plenty of opportunity from—well, first you spent some time in the Washtenaw County Jail, haven't you?

"A. Quite a bit.

"Q. And, you have had plenty of opportunity to look out that window and see the bus station and Kelly's Tire?

"A. That's right.

"Q. And, you've seen cars being parked there, isn't that right?

"A. That's correct.

"Q. Is this where you got the idea to come up with the story that you took a car from that location?

"A. No, the reason I came up with that is because it's the truth.

"Q. It's the truth?

"A. That's right.

"Q. Don't you think it's rather odd that if it were the truth that you didn't come forward and tell anybody at the time you were arrested, where you got that car?

"A. No, I don't.

"Q. You don't think that's odd?

"A. I wasn't charged with auto theft, I was charged with murder.

"Q. Didn't you think at the time you were arrested that possibly the car would have something to do with the charge of murder?

"A. When I tried to talk to my attorney they wouldn't let me see him and after that he just said to keep quiet.

"Q. This is a rather recent fabrication of yours isn't [*sic*] it not?

"A. No it isn't.

"Q. Well, you told Detective LeVanseler back when you were first arrested, you stole the car back on Washtenaw and Hill Street?

"A. Never spoke with Detective LeVanseler.

"Q. Never did?

"A. Right, except when Detective Hall and Price were there and then it was on tape." Trial Transcript 302–304.

The jury convicted the respondent of first-degree murder. The Michigan Court of Appeals affirmed, *People* v. *Charles,* 58 Mich. App. 371, 227 N. W. 2d 348 (1975), and the Michigan Supreme Court denied leave to appeal, 397 Mich. 815 (1976). The respondent then sought a writ of habeas corpus in the United States District Court for the Eastern District of Michigan. The District Court withheld the writ, but a divided panel of the Court of Appeals for the Sixth Circuit

reversed. The Court of Appeals held that "the prosecutor's questions about [respondent's] post-arrest failure to tell officers the same story he told the jury violated due process" under the rule of *Doyle* v. *Ohio,* 426 U. S. 610 (1976). 610 F. 2d 417, 422 (1979).[1] The prison warden now petitions for a writ of certiorari. We grant the petition, grant the respondent leave to proceed *in forma pauperis,* and reverse the judgment of the Court of Appeals.

In *Doyle,* we held that the Due Process Clause of the Fourteenth Amendment prohibits impeachment on the basis of a defendant's silence following *Miranda* warnings. The case involved two defendants who made no postarrest statements about their involvement in the crime.[2] Each testified at trial that he had been framed. On cross-examination, the prosecutor asked the defendants why they had not told the frameup story to the police upon arrest. We concluded that such impeachment was fundamentally unfair because *Miranda* warnings inform a person of his right to remain silent and

---

[1] Neither the Court of Appeals nor the state courts addressed the question whether *Doyle* should be applied retroactively. Although the petitioner now claims that *Doyle* should be limited to prospective application, see *Stovall* v. *Denno,* 388 U. S. 293 (1967), there is no indication that this claim was raised in the courts below. Moreover, the respondent asserts that *Doyle's* prohibition against use of postarrest silence was the law of the Sixth Circuit and of the State of Michigan long before his arrest. In view of our disposition of the merits of this controversy, we express no view on the retroactivity question.

[2] One defendant said nothing at all. The other asked arresting officers, "[W]hat's this all about?" 426 U. S., at 615, n. 5. When told the reason for his arrest, he exclaimed "you got to be crazy," or "I don't know what you are talking about." *Id.,* at 622–623, n. 4 (STEVENS, J., dissenting). Both the Court and the dissent in *Doyle* analyzed the due process question as if both defendants had remained silent. The issue was said to involve cross-examination of a person who "does remain silent" after police inform him that he is legally entitled to do so. *Id.,* at 620 (STEVENS, J., dissenting); see *id.,* at 616–619; *id.,* at 621, 622, 626 (STEVENS, J., dissenting). In any event, neither the inquiry nor the exclamation quoted above contradicted the defendant's later trial testimony.

assure him, at least implicitly, that his silence will not be used against him. 426 U. S., at 618–619; see *Jenkins* v. *Anderson, ante,* at 239–240.

*Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all. See *United States* v. *Agee,* 597 F. 2d 350, 354–356 (CA3) (en banc), cert. denied, 442 U. S. 944 (1979); *United States* v. *Mireles,* 570 F. 2d 1287, 1291–1293 (CA5 1978); *United States* v. *Goldmcn,* 563 F. 2d 501, 503–504 (CA1 1977), cert. denied, 434 U. S. 1067 (1978).

In this case, the Court of Appeals recognized that the respondent could be questioned about prior statements inconsistent with his trial testimony. The court therefore approved the "latter portion of the above quoted cross-examination. . . ." 610 F. 2d, at 421. But the Court of Appeals found that "the earlier portion of the exchange" concerned the "separate issu[e]" of the respondent's "failure to tell arresting officers the same story he told the jury." *Ibid.* In the court's view, these questions were unconstitutional inquiries about postarrest silence. Thus, the Court of Appeals divided the cross-examination into two parts. It then applied *Doyle* to bar questions that concerned the respondent's failure to tell the police the story he recounted at trial.

We do not believe that the cross-examination in this case can be bifurcated so neatly. The quoted colloquy, taken as a whole, does "not refe[r] to the [respondent's] exercise of his right to remain silent; rather [it asks] the [respondent] why, if [his trial testimony] were true, he didn't tell the officer that he stole the decedent's car from the tire store parking lot instead of telling him that he took it from the

street." 58 Mich. App., at 381, 227 N. W. 2d, at 354. Any ambiguity in the prosecutor's initial questioning was quickly resolved by explicit reference to Detective LeVanseler's testimony, which the jury had heard only a few hours before. The questions were not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement.

We conclude that *Doyle* does not apply to the facts of this case. Each of two inconsistent descriptions of events may be said to involve "silence" insofar as it omits facts included in the other version. But *Doyle* does not require any such formalistic understanding of "silence," and we find no reason to adopt such a view in this case.

The judgment of the Court of Appeals is

*Reversed.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE MARSHALL joins, dissents and would affirm the judgment of the Court of Appeals for the reasons stated in its opinion.