THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL T. SMITH, Defendant-Appellant.

Fourth District    No. 4—86—0665

Opinion filed June 29, 1987.

Daniel D. Yuhas and Timothy M. Gabrielsen, both of State Appellate Defender's Office, of Springfield, for appellant.

Tim P. Olson, State's Attorney, of Jacksonville (Kenneth R. Boyle, Robert J. Biderman, and Kenneth R. Baumgarten, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

On May 7, 1986, the defendant, Michael Smith, was convicted of intimidation (Ill. Rev. Stat. 1985, ch. 38, par. 12—6(a)(1)) and unlawful restraint (Ill. Rev. Stat. 1985, ch. 38, par. 10—3(a)) following a jury trial. The defendant was acquitted of two counts of armed violence (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2). The charges against the defendant arose subsequent to an incident which occurred on December 11, 1985, in the parking lot of the Regulator, a tavern in Jacksonville, Illinois. The defendant was sentenced to 30 months' probation and ordered to pay a $2,000 fine, restitution, and court costs. The defendant appeals his conviction.

The defendant claims that he was denied due process of law per *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, where the prosecutor, at trial, made reference to his post-arrest silence. We affirm.

At trial, Alaina Turnbaugh, the victim, testified that on December 11, 1985, after work at approximately 11 p.m., she stopped at the Country Market to purchase cigarettes and then proceeded to the Regulator to meet some friends. Turnbaugh stated that she parked her car and then turned on the interior lights to check her makeup. While looking into the rearview mirror, Turnbaugh noticed a car parked behind her. Suddenly, her car door was yanked open and the defendant told Turnbaugh she was under arrest for drug trafficking. Turnbaugh claimed that the defendant pointed a gun at her head, grabbed her left arm, pulling her out of the car, and demanded that she accompany him.

When Turnbaugh asked the defendant for some identification, the defendant showed an ID card which Turnbaugh recognized as a Jacksonville Correctional Center ID. Turnbaugh then attempted to escape from the defendant, but the defendant slapped her and threatened to kill her while placing the gun in her mouth. During the struggle, two cars pulled into the parking lot. After the second car pulled in, Turn-

baugh broke away from the defendant and ran into the Regulator. The police were immediately contacted.

The next morning, Turnbaugh was taken to the Jacksonville Correctional Center to view employee identification cards. After viewing all of the prison ID's, Turnbaugh identified the defendant as her attacker. Thereafter, a warrant was issued for the defendant's arrest and a search warrant was issued for defendant's home and automobile.

Office James Potter and Officer Richard Moss went to the Jacksonville Correctional Center to place the defendant under arrest. The defendant was placed under arrest, taken into custody, and given his *Miranda* warnings. As the officers escorted defendant to the squad car, Potter asked the defendant if he understood the charges. The defendant replied that "it was a situation that got out of hand." Potter then asked the defendant if he knew the girl, to which the defendant responded, "She was a girlfriend of Marty Savage, another guard."

After being informed of the search warrant, the defendant told the officers they would not find anything in his car, but surrendered the keys to his apartment, telling the officers where to find the gun and clothes he wore on the night of the incident.

At trial, the defendant testified that he knew Turnbaugh and when he saw her seated in her car with the lights on, he decided to play a practical joke on her. The defendant stated that he believed Turnbaugh was taking drugs. The defendant further testified that Turnbaugh lost her temper, had to be subdued, and slipped and fell as she exited her car. The defendant maintained that he was not armed and that he never struck the girl. The defendant claimed that Turnbaugh's blouse tore as he attempted to assist her after she fell to the ground.

During cross-examination, the following colloquy ensued:

"[PROSECUTOR]: Is it true that you told the police officers when you got arrested that it got out of hand, the situation, right?

[DEFENDANT]: Yes.

[PROSECUTOR]: They didn't mention Alaina's name at that time, did they? You just assumed that, I take it? Is that right?

[DEFENDANT]: Right.

[PROSECUTOR]: You didn't say it was a practical joke?

[DEFENDANT]: No, not at that time, no.

[PROSECUTOR]: You said that it was Marty Savage's girl

friend. You didn't say it was a practical joke then, did you? You never mentioned a practical joke.

[DEFENDANT]: No.

[PROSECUTOR]: And that was right when they arrested you, is that not correct?

[DEFENDANT]: Right.

[PROSECUTOR]: When you got in the car and they asked you about the search warrant and the gun that was used. Why did you say that it was--that's why it was in the car that night."

Defense counsel objected to this line of questioning claiming that the defendant had been given *Miranda* warnings and that any comment on defendant's silence violated *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. The prosecution, however, maintained that because the defendant had not remained absolutely silent subsequent to being given *Miranda* warnings, *Doyle* was inapplicable. The court informed the prosecutor that the line of questioning was close to a *Doyle* violation, and instructed him to proceed on other points. The objection was overruled and no curative instruction was given.

At closing argument, the prosecutor argued that there was no corroboration of the defendant's testimony that the incident was a practical joke. The jury found the defendant guilty of intimidation and unlawful restraint and not guilty of two counts of armed violence.

■ On appeal, the defendant argues that the State improperly cross-examined him regarding his post-arrest silence and commented upon the same in closing argument in contravention of the rule enunciated in *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. The State, however, maintains that *Doyle* is inapplicable as the defendant did not remain silent after being arrested, thereby allowing prosecutorial inquiry regarding any inconsistency between defendant's post-arrest statements and his trial testimony.

In *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, the Supreme Court held the use of a defendant's post-arrest silence to impeach an exculpatory story told for the first time at trial is a deprivation of due process under the fourteenth amendment. The court noted that silence in the wake of *Miranda* warnings may be nothing more than an exercise of the defendant's right and that such silence is "insoluably ambiguous." Consequently, the court held that it would be fundamentally unfair to allow silence after receipt of the warnings to be used to impeach an explanation offered at trial. *Doyle v. Ohio* (1976), 426 U.S. 610, 617-18, 49 L. Ed. 2d 91, 97-98, 96 S. Ct.

2240, 2244-45.

As every rule gives rise to exceptions, there are well-recognized circumstances under which the State may permissibly comment on post-arrest silence. In *People v. Henson* (1978), 58 Ill. App. 3d 42, 373 N.E.2d 852, this court concluded that *"Doyle* bars comment and cross-examination only as to silence claimed as a result of *Miranda* warnings, but does not bar comment on statements given after such warning." (58 Ill. App. 3d 42, 46, 373 N.E.2d 852, 855.) The Supreme Court reiterated this line of reasoning in *Anderson v. Charles* (1980), 447 U.S. 404, 65 L. Ed. 2d 222, 100 S. Ct. 2180, noting that when a defendant's exculpatory testimony at trial is inconsistent with statements made after being fully advised of his *Miranda* rights, any comment or evidence regarding the defendant's failure to give the same statement at that time will not violate *Doyle. Anderson v. Charles* (1980), 447 U.S. 404, 65 L. Ed. 2d 222, 100 S. Ct. 2180.

Illinois courts have construed *Doyle* and its progeny to require a showing of "manifest inconsistency" between a defendant's post-arrest statement and his trial testimony before the prosecutor is permitted to comment on the post-arrest silence. (*People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857; *People v. McMullin* (1985), 138 Ill. App. 3d 872, 486 N.E.2d 412; *People v. Timmons* (1983), 114 Ill. App. 3d 861, 449 N.E.2d 1366.) The purpose in requiring this threshold inconsistency is to assure that the prosecutor's questions are designed to elicit an explanation of the inconsistent statement, and not to draw meaning from the defendant's silence.

In the case at hand, the defendant, after being given his *Miranda* warnings, told the police officers that his arrest was the result of a "situation that got out of hand." At trial, the defendant maintained that the incident was intended to be a practical joke. The prosecutor, during cross-examination, asked the defendant why he had not told the officers the incident was a practical joke. This was, in effect, a comment on defendant's post-arrest silence.

It is clear that the defendant's post-arrest explanation of the incident and the defendant's trial testimony are not "manifestly inconsistent." In fact, the defendant's comment that "the situation got out of hand" seems to be entirely consistent with the fact that the incident started as a practical joke. As such, it was error for the prosecutor to comment on the defendant's failure to extrapolate upon his initial post-arrest statement. That error was, however, in our judgment, harmless beyond a reasonable doubt in light of the evidence adduced at trial. (*People v. Beller* (1979), 74 Ill. 2d 514, 525, 386 N.E.2d 857, 862, citing *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed.

470

2d 705, 87 S. Ct. 824; *Doyle v. Ohio* (1976), 426 U.S. 610, 619-20, 49 L. Ed. 2d 91, 98-99, 96 S. Ct. 2240, 2245.) The defendant maintains that the entire case hinged upon his credibility and the prosecution's cross-examination and closing argument were extremely prejudicial. The defendant, however, admitted to initiating the incident and further testified to other incidents quite damaging to his credibility. Two independent witnesses testified to witnessing the struggle. The police officers who interviewed Turnbaugh after the incident stated that the victim was bleeding from the nose and mouth and her blouse was torn. Additionally, both stated that the victim was crying and upset, acting hysterical. The prosecutor's comments were insubstantial in light of the evidence adduced at trial. The defendant's failure to explain his conduct as a prank was not damaging and we are satisfied beyond a reasonable doubt that the error did not contribute to his conviction. Consequently, the conviction is affirmed.

Affirmed.

SPITZ, P.J., and GREEN, J., concur.