THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES E. ROMANOSKY, Defendant-Appellant.

Fifth District   No. 5—86—0351

Opinion filed September 9, 1987.

Thomas W. Mansfield, of Reed, Heller & Mansfield, of Pinckneyville, for appellant.

John R. Clemons, State's Attorney, of Murphysboro (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, James E. Romanosky, was charged with three counts of driving a motor vehicle while his license was revoked in violation of section 6—303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—303). Following a bench trial in the circuit court of Jackson County, defendant was convicted on all three counts. He was sentenced to concurrent terms totaling 42 days' imprisonment, 12 months' probation, 30 days' community service and was ordered to pay a total of $1,300 in fines, plus costs. Defendant now appeals, arguing that the evidence was insufficient to prove his guilt beyond a reasonable doubt. For the reasons which follow, we affirm.

■ Section 6—303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—303) makes it a Class A misdemeanor for any person to drive a motor vehicle on any highway in this State at a time when his driver's license or privilege to drive, or his privilege to obtain a license, is revoked. Only two facts must be proved to establish a violation of this section: (1) that the defendant was driving a motor vehicle on a public highway of this State, and (2) that, at that time, the defendant's driver's license or privilege was revoked. *People v. Turner* (1976), 64 Ill. 2d 183, 185, 354 N.E.2d 897, 898.

In this case, the charges against defendant arose from three separate incidents which occurred, respectively, on July 9, 1985, October 25, 1985, and November 2, 1985, in the city of Carbondale. There is no dispute that on all three occasions, defendant was driving an automobile on an Illinois public highway and that his Illinois driver's license was revoked. The revocation had been in effect since June of 1984, following defendant's conviction for operating a motor vehicle while under the influence of alcohol.

Citing *People v. Eberhardt* (1985), 138 Ill. App. 3d 148, 485 N.E.2d 876, defendant nevertheless contends that he cannot be found guilty under section 6—303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—303) because, at the time of his arrests for vio-

lation of the statute, he held a current West Virginia driver's license, and the Illinois Secretary of State had taken no action to notify West Virginia authorities of the revocation of defendant's operating privileges as required by section 6—202(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—202(c)). In defendant's view, by failing to make such notification, Illinois in effect "invited" his conduct and abandoned any right to claim that he could not operate a motor vehicle here under his foreign license.

Defendant's reliance on *People v. Eberhardt* (1985), 138 Ill. App. 3d 148, 485 N.E.2d 876, is misplaced. In that case, the defendant had once resided in Illinois, but had moved to Texas in 1982. Thereafter, he allowed his Illinois license to expire and acquired a Texas license in its place. While visiting Illinois in 1984, after expiration of his Illinois license and receipt of his Texas license, he was convicted of driving under the influence of alcohol. His expired Illinois license was subsequently revoked by the Illinois Secretary of State, but he retained his Texas license, for the Secretary of State had failed to notify Texas of defendant's conviction in accordance with section 6—202(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—202(c)), which provides:

> "When a nonresident's operating privilege is suspended or revoked, the Secretary of State shall forward a certified copy of the record of such action to the motor vehicle administrator in the State where such person resides."

Thereafter, defendant was arrested and convicted for driving in Illinois while his license was revoked. In reversing defendant's conviction, the appellate court held that because Illinois had failed to properly take action against defendant's nonresident driving privilege or to notify Texas of defendant's conviction, despite its knowledge that defendant had a valid Texas license, defendant still had a "perfect right" to drive here. *People v. Eberhardt* (1985), 138 Ill. App. 3d 148, 149, 485 N.E.2d 876, 878.

The case before us is distinguishable on its facts. By way of background, the record established that defendant came to Illinois from West Virginia in 1981 to attend Southern Illinois University (SIU) in Carbondale. He was a full-time student there (except during summers) until May 1983. Although he subsequently returned to West Virginia, he periodically visited Carbondale, where he maintained certain business interests, between August of 1983 and August of 1984. In August of 1984, he enrolled as a student in the West Virginia University Law School, but continued to return to Carbondale to check on a trailer park he had purchased at approximately the same time he com-

menced his legal studies. Later, in May of 1985, he suspended his studies in West Virginia for medical reasons. Thereafter, he once again began spending the majority of his time in this State, and he ultimately attended classes on an informal basis at the SIU law school. It was at this time that the incidents culminating in the convictions which are the subject of this appeal took place.

When defendant first arrived in Illinois in 1981, he held a West Virginia driver's license. According to defendant, however, he subsequently misplaced that license while playing softball. He then applied for and received a driver's license from this State. In contrast to the situation in *People v. Eberhardt* (1985), 138 Ill. App. 3d 148, 485 N.E.2d 876, defendant's Illinois license in this case remained current and was in effect until it was revoked by the Illinois Secretary of State in June of 1984, when he was convicted here for driving under the influence of alcohol. Correspondingly, there is nothing in the record to suggest that, at the time of that conviction, defendant claimed that he was entitled to operate a motor vehicle in this State by virtue of anything other than his Illinois driver's license. Defendant's rights under a foreign driver's license were not at issue. Under these circumstances, Illinois would have had no basis for notifying West Virginia authorities of defendant's conviction pursuant to section 6—202(c) of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—202(c)). We therefore find nothing in *People v. Eberhardt* (1985), 138 Ill. App. 3d 148, 485 N.E.2d 876, which mandates reversal of defendant's subsequent convictions for driving while his license was revoked.

The record does show that after defendant misplaced his West Virginia driver's license, it was subsequently returned to him. He apparently retained this license even after he was issued his Illinois license. Indeed, the evidence established that he actually renewed this license in July of 1984, less than one month after his Illinois license had been revoked, and that he attempted to use this license on the three occasions in 1985 when he was arrested for violation of section 6—303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—303). These facts do not, however, aid defendant's position.

Section 6—101 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—101) provides, in part:

"No drivers license shall be issued to any person who holds a valid Foreign State license unless such person first surrenders to the Secretary of State any such valid Foreign State license."

This requirement is also set forth in section 6—704.3 of the "Driver License Compact" (Ill. Rev. Stat. 1985, ch. 95½, par. 6—704.3). The

"Driver License Compact" is part of the Illinois Vehicle Code, and both Illinois and West Virginia are party States to the compact.

Because defendant had misplaced his West Virginia driver's license at the time he applied for his Illinois license, he obviously could not physically surrender it to the Secretary of State. By applying for and accepting an Illinois license, however, we believe that defendant must nonetheless be regarded as having renounced his right to drive under his West Virginia license just as surely as if he had handed the license certificate over to the Secretary of State's office. The West Virginia license ceased to have legal effect, and defendant was entitled to drive in this State only under authority of his new Illinois license.

When defendant's Illinois license was revoked, he was not permitted to operate a motor vehicle in this State until he obtained a new license in accordance with the Illinois Vehicle Code. (Ill. Rev. Stat. 1985, ch. 95½, par. 6—210.) Pursuant to section 6—208(b) of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—208(b)), he could have applied to the Illinois Secretary of State for reinstatement of his Illinois license one year from the date of the revocation. While the record indicates that defendant did make inquiries of the Secretary of State's office as to how he could have his Illinois license restored after the requisite one-year period had passed, there is no question that defendant made no formal application for and the Secretary of State did not issue him a new license.

Pursuant to section 6—704.2 of the "Driver License Compact" (Ill. Rev. Stat. 1985, ch. 95½, par. 6—704.2), which, as we have noted, is also part of the Code, defendant might alternatively have applied for a new license from West Virginia. As with section 6—208 of the Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—208), however, that provision likewise specifies that a new license could not be issued until one year had passed following the revocation. Again, the record suggests that the defendant did not apply for or receive a new license from West Virginia pursuant to this provision.

■ Defendant's purported renewal of his West Virginia license in 1984 cannot be held to have constituted compliance with section 6—704 (Ill. Rev. Stat. 1985, ch. 95½, par. 6—704). The reasons for this are straightforward. First, as we have found, defendant must be deemed to have surrendered his West Virginia license when he applied for and accepted his Illinois license. Thus, his West Virginia license was no longer valid when he sought to have it renewed, and the purported renewal was of no effect. Second, the purported renewal, made as it was less than a month following revocation of defendant's

Illinois license, was contrary to the express one-year requirement of section 6—704 and therefore invalid.

For the foregoing reasons, we find that the evidence was sufficient to convict defendant of all charges of driving while his license was revoked in violation of section 6—303 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—303). Accordingly, the judgment of the circuit court of Jackson County is affirmed.

Affirmed.

KARNS, P.J., and KASSERMAN, J., concur.