THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES R. JOHNSON, Defendant-Appellant.

Fourth District   No. 4—87—0578

Opinion filed June 16, 1988.

Daniel D. Yuhas and Arden J. Lang, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and J. A. C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Following a jury trial, the defendant was convicted of driving while license was suspended (Ill. Rev. Stat. 1985, ch. 95½, par. 6–303) and was sentenced to a term of 180 days' incarceration. The defendant appeals, arguing: (1) the evidence, which was purely circumstantial, was insufficient to prove his guilt beyond a reasonable doubt; (2) he was denied due process of law where the State precluded evidence regarding lack of notice of the suspension of his driving privileges; and (3) the prosecutor committed reversible error by commenting on his post-arrest silence.

At trial, Robert Steer, deputy sheriff of Champaign County, testified that on April 12, 1987, at approximately 8 p.m., he responded to a radio dispatch of an accident with injuries. The accident had occurred at a T-intersection of two country roads located at 2400 N and 1300 E in Champaign County.

According to Steer, it was a clear night. As he approached the scene he witnessed a motorcycle lying in a field and three people standing nearby. One of the individuals was the defendant, who was covered with mud and blood. The remaining two individuals informed the officer that they had come upon the scene after the accident had occurred. They told Steer they found the defendant lying face down in the mud. The defendant had received minor injuries to his head. The keys to the motorcycle were still in the ignition.

Troy Daniels, deputy sheriff of Champaign County, arrived on the scene shortly after Steer. Shortly after Daniels arrived, an ambulance came and took the defendant to Burnham Hospital. Daniels proceeded to measure the scene of the accident. He described the ground as muddy and the area as rural. After completing the accident investiga-

tion, Daniels proceeded to the hospital to speak with the defendant.

As Daniels entered the hospital, the defendant was being released from emergency. Daniels approached the defendant and spoke directly to him. Daniels was in possession of the defendant's boots, which were in a plastic bag. As Daniels gave the defendant his boots, the defendant asked if he could put them on. Daniels stated that he looked at the boots and informed the defendant that they were very muddy. The defendant replied, "I just flipped my bike into a muddy field." At the time this conversation occurred, Daniels, who was in uniform, had identified himself as an officer of the law.

Daniels then placed the defendant under arrest for driving without a license, cuffed the defendant, and took him to his squad car. The defendant was taken to headquarters where he was given his *Miranda* warnings and questioned about the incident. The defendant, however, refused to answer any questions.

The State then introduced an abstract from the Secretary of State's office which indicated the defendant's license was suspended on April 12, 1987.

The defense presented Charlie Gaines, a friend of both the defendant and his girlfriend, Sheila Rosemeir. Gaines stated that he lives next door to Rosemeir and the defendant. According to Gaines, he had been at Rosemeir's residence on the evening of April 12 at approximately 7 p.m. At that time, Rosemeir received a phone call from the defendant. Rosemeir then informed Gaines that she needed to go to Rantoul to pick up the defendant. April Johnson, the defendant's sister-in-law, corroborated this testimony. Johnson was also present at Rosemeir's residence on the evening of April 12. Johnson stated that Rosemeir left after receiving a phone call from the defendant.

Murrell Heath, a friend of the defendant, testified that on April 12, 1987, the defendant was working at his home in Rantoul. At approximately 5:30 the men stopped working, and at 7 p.m. the defendant called Rosemeir to obtain a ride home. According to Heath, Rosemeir arrived shortly thereafter. She was driving a motorcycle. She picked up the defendant and the two left. According to Heath, defendant was riding on the back of the cycle.

Sheila Rosemeir testified that she has been living with the defendant for approximately one year. On April 12, 1987, at approximately 7 p.m., she went to Rantoul in response to defendant's request for a ride home. After picking up the defendant, they came upon an intersection where there was a T in the road. Rosemeir hit the brakes, slid in the gravel, and lost control of the motorcycle. The motorcycle went into the ditch and the defendant was thrown from the bike. Rosemeir

stated that she was bruised, but received no other injuries. The defendant, however, was injured. As a result, Rosemeir went in search of help for the defendant. Rosemeir claimed she started walking westward and was eventually picked up by a middle-aged couple who drove her into town. Rosemeir admitted that she did not call an ambulance or the police, but proceeded home and then returned to the scene to retrieve her motorcycle. According to Rosemeir, she arrived back at the scene at approximately 8:30 p.m. and everyone was gone. Rosemeir admitted that she never told anyone that she was driving the motorcycle when the accident occurred.

The defendant testified that on the evening of April 12, 1987, he called Rosemeir to obtain a ride home. The defendant stated on the way home they had an accident after losing control of the motorcycle in some gravel. The defendant claimed he hit a sign and flew off of the back of the motorcycle. The defendant could not remember talking to the police at the scene of the incident, did not remember riding in the ambulance, and did not remember receiving treatment in the emergency room. The defendant only remembered waking up in a jail cell.

On cross-examination, the defendant admitted that his license was suspended at the time of the accident. He also denied making any statements to the police at the scene of the accident or at the hospital.

In rebuttal, the State presented Officer Steer, who stated that he traveled west on 2400 N to the scene of the incident. Steer stated that he did not see a woman walking from the scene of the accident. He further stated that the defendant appeared completely alert and responded to questioning at the scene of the incident.

Based on this evidence, the jury returned a verdict of guilty. The case was held over for sentencing, and on July 28, 1987, the court denied the defendant's motion for a new trial and sentenced the defendant to 180 days' incarceration in the Champaign County Correctional Center. From this conviction and sentence, the defendant appeals.

■ In order to establish a violation of driving while license is suspended the State must establish: (1) the defendant was driving a motor vehicle on a public highway in the State of Illinois; and (2) at that time, the defendant's driver's license was suspended. (Ill. Rev. Stat. 1985, ch. 95½, par. 6–303; *People v. Romanosky* (1987), 160 Ill. App. 3d 120, 121, 513 N.E.2d 161, 162, citing *People v. Turner* (1976), 64 Ill. 2d 183, 185, 354 N.E.2d 897, 898.) There is no question that the act of driving, in this context, can be proved by circumstantial evidence. See *People v. Younge* (1980), 83 Ill. App. 3d 305, 404 N.E.2d

415.

A conviction can be sustained on circumstantial evidence alone. (*People v. Hall* (1986), 114 Ill. 2d 376, 499 N.E.2d 1335, *cert. denied* (1987), 480 U.S. 951, 94 L. Ed. 2d 802, 107 S. Ct. 1618.) Such a conviction is justified where all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt that the defendant is guilty of the offense as charged. (*Hall*, 114 Ill. 2d 376, 499 N.E.2d 1335.) The jury need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstantial evidence.

It is the jury's prerogative to weigh the testimony in light of its discrepancies and conflicts, to accept or reject as much or as little of the testimony as it pleases, and to draw reasonable inferences therefrom. (*People v. Kosyla* (1984), 129 Ill. App. 3d 685, 472 N.E.2d 1207, *cert. denied* (1985), 474 U.S. 832, 88 L. Ed. 2d 82, 106 S. Ct. 101.) Upon review, the court should not lightly disregard the jury's judgment on credibility questions and should only reverse where the evidence is not sufficient to remove all reasonable doubt of guilt. *People v. Newell* (1984), 103 Ill. 2d 465, 469 N.E.2d 1375.

■ The evidence presented at trial was fraught with conflicts and inconsistencies. Thus, the ultimate determination was one of credibility for the jury. Officer Daniels testified that the defendant stated he had "flipped his bike into a muddy field." During all of his interactions with the police, the defendant never made any indication that he was not the individual in control of the motorcycle. The officers testified the defendant was coherent at the scene and responded to questioning. The defendant, however, denied making any such statements. Additionally, the bias of the defense witnesses was made clear to the jury. Based on our review of the record, we cannot say that the judgment of the jury was against the manifest weight of the evidence.

■ The defendant next claims a denial of due process of law. Prior to trial, the court granted the State's motion *in limine* seeking to prevent the presentation of evidence on the issue of receipt of notice of suspension. The defendant maintains the court committed constitutional error by depriving him of the opportunity to present a defense.

As previously established, a conviction for driving while license is suspended only requires proof of the act of driving while privileges are suspended. (Ill. Rev. Stat. 1985, ch. 95½, par. 6—303; *People v. Turner* (1976), 64 Ill. 2d 183, 354 N.E.2d 897; *People v. Strode* (1973), 13 Ill. App. 3d 697, 300 N.E.2d 323.) Thus, the offense involves strict liability, and evidence of the defendant's actual receipt of notice or knowledge of suspension is immaterial. (*People v. Stevens* (1984), 125

Ill. App. 3d 854, 466 N.E.2d 1321; *People v. Twitty* (1975), 25 Ill. App. 3d 1065, 324 N.E.2d 222.) Where evidence is immaterial to the issues of the case at hand, it is appropriate for the trial court to exclude such evidence. (*Twitty*, 25 Ill. App. 3d 1065, 324 N.E.2d 222.) Consequently, the court did not err in granting the State's motion.

Moreover, evidence at trial indicated that the defendant was adequately notified of his suspension. Both the defendant and his girlfriend testified that the defendant was aware of the fact that his driving privileges had been suspended.

■ Finally, the defendant alleges a violation per *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, where the State impermissibly commented on the defendant's post-arrest silence.

During the direct examination of Troy Daniels, the arresting officer, the following colloquy ensued:

"PROSECUTOR: Did he (the defendant) have occasion to make any statements in the vehicle on the way to the correctional center?

A. Mr. Johnson was concerned about the bike. He asked me if the motorcycle was all right and I explained to him that it looked all right, that the left rear turn signal or brake light was broken off and that the right rear brake was broken. He was relieved because then he stated that the motorcycle was his girlfriend's, a Sheila Rosemeir or something like that, was the word that he used, and I asked him to spell it for me.

Q. Did he indicate that she had been driving?

A. He never made a statement like that.

Q. But, he said she owned the bike?

A. Yes, sir.

Q. So, no indication that he was not driving or anything of the sort?

A. No, he never said anything like—."

At this point, defense counsel objected, the objection was sustained, and the jury was instructed to disregard the testimony. The court instructed the jury that the testimony was not evidence in the case and should not be considered.

Questioning then proceeded and Officer Daniels stated that the defendant had been *"Mirandized"* and brought in for questioning. The prosecutor again asked Daniels if the defendant said anything about who was driving the motorcycle. Again, the defense counsel objected, and the objection was sustained. The court instructed the jury once again to disregard evidence of the defendant's silence. Questioning again continued and the prosecutor made a third attempt to elicit

testimony of defendant's refusal to state that anyone else was driving. Again, the defense objection was sustained.

During closing argument, the prosecutor made the following comment:

> "Now, we have got the time of the scene where he makes no indication to anyone that he was not driving. He's being placed under arrest for driving while he's suspended and he never says, 'I wasn't driving.' "

Initially, the State argues waiver where defense counsel failed to object during closing argument. We, however, find waiver inappropriate in light of the objections made during direct examination at trial and the constitutional implications involved. See *People v. McMullin* (1985), 138 Ill. App. 3d 872, 486 N.E.2d 412.

It is a well-established principle of law that a defendant's post-arrest silence may not be used to impeach an exculpatory story told for the first time at trial. (*Doyle v. Ohio* (1976), 426 U.S. 610, 617-18, 49 L. Ed. 2d 91, 97-98, 96 S. Ct. 2240, 2244-45.) Such inquiry is prohibited because after being apprised of one's *Miranda* rights, a defendant's failure to speak may be nothing more than the exercise of the right to be silent. Consequently, the ambiguous nature of such silence renders it fundamentally unfair to allow presentation of this evidence at trial to impeach the witness. *Doyle*, 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240; see also *People v. Smith* (1987), 157 Ill. App. 3d 465, 510 N.E.2d 515.

The rule established in *Doyle* is not without exception. There are circumstances in which the State may permissibly comment on post-arrest silence at trial. For example, where the defendant at trial falsely claims that he also gave his exculpatory statement to the police when arrested, he may be impeached with evidence that he did not do so. Additionally, where defendant's exculpatory testimony at trial is manifestly inconsistent with statements made after arrest, any comment or evidence concerning his failure to give the same statement at that time will not violate the *Doyle* rule. *Anderson v. Charles* (1980), 447 U.S. 404, 408, 65 L. Ed. 2d 222, 226, 100 S. Ct. 2180, 2182.

The case herein, however, does not fall within these exceptions. The statements made by the defendant prior to arrest were inconsistent with his testimony at trial. In this respect, that evidence was properly introduced. The prosecutor's questioning, however, in regard to the absence of any post-arrest statement was highly improper. The defendant properly invoked his right to remain silent after being placed under arrest and made no statements whatsoever.

Thus, it cannot be argued that the trial testimony is manifestly inconsistent with a post-arrest statement. The defendant made no exculpatory statements after being arrested.

Contrary to the State's assertions, we cannot say that the prosecutorial misconduct which occurred was harmless error. (*Cf. Greer v. Miller* (1987), 483 U.S. ___, 97 L. Ed. 2d 618, 107 S. Ct. 3102, (single improper *Doyle* inquiry followed by an immediate objection and two curative instructions was deemed harmless error).) The prosecutor's continuing attempts to elicit evidence of the defendant's post-arrest silence after the court sustained defense objections along with the prosecutor's improper comment during closing argument cannot be condoned and do constitute reversible error.

Based on the foregoing, the judgment of the circuit court of Champaign County is reversed and remanded.

Reversed and remanded.

LUND and KNECHT, JJ., concur.