THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
VITTORIO J. AQUINO, Defendant-Appellant.

Fourth District   No. 4—92—0139

Opinion filed December 23, 1992.

Daniel D. Yuhas and Gloria A. Morris, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In June 1991, the State charged defendant, Vittorio J. Aquino, with attempt (first degree murder) (Ill. Rev. Stat. 1991, ch. 38, pars. 8—4(a), 9—1(a)(1)) and aggravated battery with a firearm (Ill. Rev. Stat. 1991, ch. 38, par. 12—4.2(a)). In September 1991, defendant waived his right to a jury trial, and the trial court conducted a bench trial and found defendant guilty of both offenses. In January 1992, the court sentenced defendant to 20 years in prison. Defendant appeals, arguing that (1) the trial court considered an improper factor in

reaching its verdict, and (2) his conviction for aggravated battery with a firearm should be vacated. We disagree with defendant's first argument, but agree with his second and remand accordingly.

## I. BACKGROUND

Because defendant does not challenge the sufficiency of the evidence, we need not discuss it in great detail. A summary of the evidence presented at trial is as follows.

In June 1991, defendant and his wife, Debbie Aquino, the victim in this case, had an argument about her ex-husband. She decided to take the children to a movie, and as she changed her clothes to do so, defendant shot her in the head. Mrs. Aquino was seriously injured but did not die. Two of Mrs. Aquino's children witnessed the shooting, and one said that she saw defendant put the gun up to her mother's head, take two steps back, and shoot.

Defendant admitted that he and his wife were arguing when he shot her, but he claimed the shooting was an accident. He explained that as she was getting dressed, he noticed that his handgun was on the dresser instead of in the closet where it belonged. He decided to put the gun away, and in the process of trying to unload it by removing its clip, he accidentally fired it. However, defendant's behavior after the shooting—as even testified to by him, but particularly as testified to by the children—was not consistent with defendant's claim of accident.

One of the police officers who responded to the scene testified that after he arrested defendant, defendant volunteered that "they" were fighting over the gun. At trial, defendant's counsel attempted to show that defendant's brother made that statement, not defendant. However, the officer insisted that defendant, not his brother, made the statement, although he appeared somewhat confused when he testified regarding the use of "we" as opposed to "they."

In announcing its guilty verdict, the trial court explained at length how it viewed the evidence. The following excerpts from the trial court's remarks pertain to the issues on appeal:

"In summary, it appears that there had been some trouble on the evening of the day in question, June 15th, and although no big arguments took place or no prior violence, according to the testimony there was indication that the defendant was upset or agitated.

Police Officer Heath said that the defendant told him shortly after the incident when he went to the defendant's home that they were fighting over a gun.

\* \* \*

The defendant's testimony attempted to show that the shooting was an accident. The Court has found that the defendant's testimony is substantially not credible.

At no time did the defendant tell anyone, either immediately after the shooting, or soon thereafter when the police came, that this had been an accident. It wasn't until the trial testimony by the defendant that it was presented as an accident. This was not credible and the Court considered that to be very important evidence.

The defendant admitted that he was upset at the time of the shooting. Earlier the wife, the victim, had left against his wishes for a brief period of time, had come back, then she was leaving again. He told her two or three times not to go to the movies. She was going. So there was some evidence of agitation.

\* \* \*

The defendant's description of the actual shooting is just not consistent with the facts. Without mentioning everything, \* \* \* the victim said she was standing, he said she was squatting or stooping. He said he had always kept the gun loaded and cocked, and that the night before he took it down from the box where it had always been kept to clean it, [he] put it in the drawer, and at the time of the discussion when she was getting ready to leave the defendant says that he was trying to unload the gun to put it back in the box. This was not consistent.

The defendant's explanation of what happened after the shooting is not consistent with an explanation of it being an accident. There was [sic] no, as I said, no statements to that effect, which it would seem would have been a natural thing to do, no matter what, would be to express it being an accident.

He made no real efforts to help, in fact, he hindered the efforts, and although obviously it was a traumatic experience for all, he was a trained person in medical type matters [(defendant worked as a nurse's assistant)], and everything that he did or said he did or that others said he did certainly did not indicate that he was attempting to assist. The victim had to get up and leave herself and take herself to the hospital.

\* \* \*

In summary the totality of the facts do not support the description of this event as being an accident. The gun could not have been fired accidentally as described by the defendant and

in light of all of the other facts that were brought into this case, some of which I mentioned, the Court in this case finds that the shooting was intentional."

Defendant filed a post-trial motion which alleged in pertinent part the following:

"The Court erred in considering the absence of any statement by Defendant that he told anyone that the shooting was an accident. Said inference is unsupported by the evidence, violates Defendant's constitutional right to remain silent, and cannot be considered an admission by silence under the rules of evidence."

The trial court denied the motion and stated that the court's guilty verdict "was based on only what was related at the trial and certainly not based on anything that [defendant] did not say or any silence that chose to take advantage of at the time of the arrest and the time the police came."

## II. THE ALLEGED *DOYLE* VIOLATION

The record reveals that no witness ever testified that defendant was given the *Miranda* warnings. While acknowledging that fact, defendant argues on appeal that "his possible failure to make an exculpatory statement should not have been used as a chief reason to convict him of attempt first degree murder." Defendant further argues that "[i]t is fundamentally unfair to breach the promise implicit in the *Miranda* warnings that 'silence will carry no penalty' by using that silence against the defendant at trial." In support of these arguments, defendant primarily cites *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, and *Doyle*'s progeny, *Wainwright v. Greenfield* (1986), 474 U.S. 284, 88 L. Ed. 2d 623, 106 S. Ct. 634. We disagree with defendant's argument that *Doyle* applies to this case.

■ First, defendant did not remain silent after he was taken into custody; instead, the arresting police officer testified that defendant volunteered the information that he and his wife had been fighting over a gun. In *People v. Johnson* (1988), 170 Ill. App. 3d 828, 834, 525 N.E.2d 546, 551, this court pointed out that an exception to the *Doyle* rule exists

"where defendant's exculpatory testimony at trial is manifestly inconsistent with statements made after arrest[; thus] any comment or evidence concerning his failure to give the same statement at that time will not violate the *Doyle* rule. *Anderson v. Charles* (1980), 447 U.S. 404, 408, 65 L. Ed. 2d 222, 226, 100 S. Ct. 2180, 2182."

We note that defendant's statement that he and his wife had been fighting over a gun is "manifestly inconsistent" with the accident scenario to which he testified at trial.

Second, because the police never gave defendant his *Miranda* warnings, *Doyle* does not apply to the facts of this case. In a remarkably similar case, *Brecht v. Abrahamson* (7th Cir. 1991), 944 F.2d 1363, *cert. granted* (1992), 504 U.S. 972, 119 L. Ed. 2d 563, 112 S. Ct. 2937, the Seventh Circuit Court of Appeals presented a most comprehensive and persuasive analysis of the current state of the law regarding *Doyle*. In *Brecht*, the defendant was convicted of murder in a Wisconsin State court. The defendant in *Brecht* claimed that he accidentally shot the victim, his brother-in-law, when defendant tripped while running with a loaded rifle. Defendant revealed this "accident scenario" for the first time at his trial.

Because nothing in the trial record implied that defendant was told until his arraignment that he had a right to remain silent, the supreme court of Wisconsin rebuffed all of defendant's claims that the State had improperly used his silence to impeach him when he testified. (See *State v. Brecht* (1988), 143 Wis. 2d 297, 421 N.W.2d 96; *Brecht*, 944 F.2d at 1365.) However, the Wisconsin Supreme Court assumed that the trial court had informed defendant of his right to remain silent at his arraignment. The supreme court then concluded that the prosecutor violated *Doyle* (1) by asking defendant whether he told anyone at any time before trial that the shooting was accidental, and (2) by remarking in closing argument that defendant had told no one. Nonetheless, the Wisconsin Supreme Court affirmed defendant's conviction, finding these few references in a four-day trial to be peripheral and harmless beyond a reasonable doubt.

The Federal district court disagreed with this finding and granted *habeas* relief. (*Brecht v. Abrahamson* (W.D. Wis. 1991), 759 F. Supp. 500.) The Seventh Circuit reversed, reinstated the conviction, and discussed the *Doyle* issue as follows:

> "[In] *Jenkins v. Anderson*, 447 U.S. 231, 235-39, 100 S. Ct. 2124, 2127-30, 65 L. Ed. 2d 86 (1980), [the United States Supreme Court] *** held that use of silence to impeach a testifying defendant does not violate the self-incrimination clause of the federal Bill of Rights. Turning to the due process inquiry, the court observed that prosecutors may use as impeachment silence preceding the delivery of the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). See *Fletcher v. Weir*, 455 U.S. 603, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982). ***

* * *

'Common law traditionally has allowed witnesses to be impeached by their previous failure to state a fact in circumstances in which that fact naturally would have been asserted. Each jurisdiction may formulate its own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative.' *Jenkins*, 447 U.S. at 239, 100 S. Ct. at 2129 (citations omitted). If Brecht indeed shot [his brother-in-law] by accident, he had every reason to tell the police early and often. How else was he to win release from prison—or to ensure that investigators preserved evidence that would support his version of events? Why would an innocent man keep his sister in the dark about the circumstances of her husband's death? Would he not at least apologize for the accident? Silence supports an inference that it took Brecht a while to cook up a story. Fabricated defenses are best withheld until after the [S]tate has rested, not only to catch the opposition off guard but also to avoid any blatant inconsistencies with the facts the prosecution adduces.

But for *Doyle v. Ohio*, the prosecutor would have been entitled to ask the questions and argue the case precisely as he did. *Doyle* holds that however natural the inference from silence may be, the prosecutor may not undermine the implications of the *Miranda* warnings. A suspect told that he has a right to remain silent, *Doyle* concluded, may not be bushwhacked by an argument that silence implies guilt. *Fletcher establishes that Doyle applies exclusively to silence after the suspect has been informed about the privilege of silence.* Nothing in this record implies that Brecht received such advice before his arraignment. Thus, as the Supreme Court of Wisconsin held, *questions and arguments about silence before arraignment are proper*, while the questions and remarks in closing argument concerning whether Brecht told his story 'at any time' before trial stand condemned by *Doyle*, for they referred in part to post-warning silence. ***

* * *

In the years since *Doyle* the Court has thought better of its suggestion that no argument from silence may be presented to a jury. *Jenkins* allowed a prosecutor to urge inferences from pre-arrest silence, remarking that ambiguity 'is a question of state evidentiary law.' 447 U.S. at 239 n. 5, 100 S. Ct. at 2130

n. 5. *Fletcher* extended this treatment to post-arrest silence by suspects who did not receive *Miranda* warnings. Although one could have said that most suspects know of their privilege to remain silent whether or not the police tell them, and that this knowledge creates the same ambiguity mentioned in *Doyle*, the Court held that difficulties of inference are subjects for state law. *** [Thus, *Doyle's*] real foundation [is] the desire to prevent the [S]tate from undercutting the value of the *Miranda* warnings. ***

*** *Doyle* put it this way:

'[W]hile it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.'

426 U.S. at 618, 96 S. Ct. at 2245. *Jenkins*, which allows reference to pre-arrest silence, and *Fletcher*, which allows reference to post-arrest silence if the officers neglected to give *Miranda* warnings, emphasize that the [S]tate did not afford—and therefore could not renege on—any assurance that silence is costless. Cf. *Anderson v. Charles*, 447 U.S. 404, 408, 100 S. Ct. 2180, 2182, 65 L. Ed. 2d 222 (1980) ('*Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent.'). ***

*Doyle* thus rests on a single proposition: Having implied when giving warnings that silence is safe, the government may not reverse course at trial. The rule of *Doyle* reduces the chance that *Miranda* warnings will injure the persons they are supposed to protect. *Doyle* makes the world safe for *Miranda*." (Emphasis added.) *Brecht*, 944 F.2d at 1365-70.

We agree with the Seventh Circuit's analysis and find no evidence in the present case suggesting that the State had implied to defendant that "silence is safe." Accordingly, we conclude that no violation of *Doyle* occurred both because defendant did not remain silent and because he was never given any *Miranda* warnings to induce him to believe that "silence is safe."

### III. Multiple Convictions

■ Defendant next argues, and the State concedes, that his conviction for aggravated battery with a firearm cannot stand if we affirm his conviction for attempt (first degree murder). (See *People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, 844-45 (same physical act cannot provide the sole basis for multiple convictions).) We agree, vacate defendant's conviction for aggravated battery with a firearm, and remand with directions that the trial court amend the sentencing order to reflect only the conviction for attempt (first degree murder).

### IV. Conclusion

For the reasons stated, we affirm defendant's conviction of attempt (first degree murder), vacate his conviction of aggravated battery with a firearm, and remand with directions.

Affirmed in part; vacated in part, and remanded with directions.

KNECHT and GREEN, JJ., concur.