# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 56211-1-II |
| Respondent, | |
| v. | |
| ROBBY LAYNE WHITE, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, C.J.—Robby Layne White was arrested following an altercation with his roommate at a homeless shelter. After being advised of his *Miranda*[1] rights, White agreed to answer law enforcement officers' questions. At the subsequent trial for second degree assault and unlawful imprisonment, White testified in his own defense. During trial, the State questioned White about differences between his postarrest statements to law enforcement and his trial testimony, specifically that his trial testimony contained details he did not originally disclose to law enforcement. The State also argued about these discrepancies in closing.

White appeals his convictions and sentence, arguing that the State unconstitutionally commented on his postarrest silence during trial. Because White never invoked his right to remain silent, we disagree and affirm White's convictions. But we remand for the trial court to strike the $100 DNA collection fee from White's judgment and sentence.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

FACTS

White occasionally stayed at a local homeless shelter. In early summer 2020, Roy Sorrick was White's roommate at the shelter. Late one evening, Sorrick and White had an altercation that resulted in significant injuries to Sorrick. The two men reported different versions of the incident. According to Sorrick, he and White were both in the room when White began snoring so loudly that Sorrick attempted to wake him up. Later, White got out of his bed and began beating Sorrick in the head and upper body with his walking cane. When Sorrick tried to leave the room, White blocked Sorrick's exit. After White fell asleep, Sorrick left the room and reported the incident to a staff member and eventually to law enforcement. Sorrick was transported to a nearby hospital to treat his injuries.

Officer Sean Suarez spoke with Sorrick at the hospital. Soon after, law enforcement found White near the homeless shelter and placed him under arrest. Suarez arrived at the scene and read White his *Miranda* rights. White acknowledged he understood his rights and agreed to speak with Suarez. White claimed that the incident began as a dispute over snoring and that he struck Sorrick in self-defense. White told Suarez that Sorrick complained to White about his snoring, and White denied snoring because he was awake. White then felt threatened by Sorrick "due to his standing up and posturing." Verbatim Report of Proceedings (VRP) (July 28, 2021) at 239. At that point, White struck Sorrick twice in the head. White told Sorrick that if he called the police he would "f[***] him up" and directed Sorrick to sit down on the bed, but he never told Sorrick he could not leave the room. *Id.* at 241.

The State charged White with second degree assault and unlawful imprisonment. Suarez testified at trial about White's post-*Miranda* statements. White also testified at trial. White testified

2

that on the night in question, he had a confrontation with Sorrick that began when Sorrick entered their shared room and "started grumping" about White snoring. *Id.* at 343. White testified that Sorrick then stumbled onto White, hitting White on the side of his head. White explained that he pushed Sorrick off of him and hit him in the eye with a closed fist once or twice. White testified that he started hitting Sorrick because "he was coming at me . . . in an attacking fashion." *Id.* at 344. White denied blocking Sorrick from exiting the room or hitting Sorrick with his cane.

White also testified about his conversation with Suarez, stating that he was "real honest about everything." *Id.* at 351. On cross-examination, the State confirmed that White had voluntarily acknowledged and waived his *Miranda* rights when choosing to speak with Suarez. The State then asked White about details in his testimony that he had not previously told Suarez.

> [State]: You didn't tell him any of these details; did you? . . . About how Mr. Sorrick approached you; how you were laying in bed; how he struck you on the side of the head and then he, you know, all of that. You didn't tell . . .this officer any of that; did you?
>
> [White]: He didn't ask any of that, so no, I didn't.
>
> . . . .
>
> [State]: . . . [T]hat's the whole point of him asking you questions about, hey, you know, what happened; right?
>
> [White]: And I answered the questions that he asked, yes.
>
> . . . .
>
> [State]: . . . [Y]ou didn't tell him, step by step, like you are doing here today, about how Mr. Sorrick -- how you had arrived at your room; you had laid down on your bunk?
>
> [White]: No, we didn't discuss any of that.
>
> [State]: Okay. You didn't tell him that?

[White]: It wasn't in the discussion. The only stuff I told him is the stuff we . . . discussed. If he had asked me what happened, I would have told him.

[State]: He did ask you what happened; didn't he? I mean, that's the whole point of asking you questions. . . .

[White]: I told him everything he asked. Everything he asked, I told him.

[State]: Okay. But you didn't tell these details that you provided in court here today?

. . . .

[White]: I think whatever came into the conversation. I did not hide anything from him while we were talking.

*Id.* at 356-58.

In its closing argument, the State encouraged the jury to compare White's postarrest statements to law enforcement to his testimony at trial. The State referenced the details of White's self-defense theory in his trial testimony—specifically that Sorrick hit him first causing White to punch Sorrick in defense—and argued,

[T]hose are all important details; right? Very important details. When was the first time anybody heard these details? It was when he testified earlier today.

When he was contacted and provided the opportunity by Officer Suarez to tell his story back on July 21st of last year, none of those details were provided. Nothing. He only said, well, I -- I -- I hit Roy because Roy came up on me. And I -- I hit him. That's it. No further details. Well, the details only came out now that he realizes the seriousness of this case.

*Id.* at 422.

The jury found White guilty of both charges. The trial court sentenced White to 17.5 months of confinement. The trial court found White indigent and waived all nondiscretionary legal

4

financial obligations but imposed a $100 DNA collection fee. White has an extensive criminal history, including two 2019 felony convictions in Washington.

White appeals his convictions and sentence.

ANALYSIS

I. RIGHT TO REMAIN SILENT

White argues that the State violated his constitutional right to protection against self-incrimination by commenting at trial on his silence during his arrest. We disagree.

Both the state and federal constitutions guarantee a criminal defendant the right to be free from self-incrimination, including the right to silence.[2] U.S. CONST., amend. V; WASH. CONST., art. I, § 9. When a defendant testifies at trial, due process under the Fourteenth Amendment to the United States Constitution prohibits impeachment based on a defendant's silence after they received *Miranda* warnings. *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976); *State v. Burke*, 163 Wn.2d 204, 217, 181 P.3d 1 (2008). *Miranda* warnings implicitly assure a defendant that their silence will not be used against them at trial. *State v. Belgarde*, 110 Wn.2d 504, 511, 755 P.2d 174 (1988) (citing *Doyle*, 426 U.S. at 618.).

But once a defendant waives the right to remain silent and makes a statement to police, the State may use such a statement to impeach the defendant's inconsistent trial testimony. This exception to the rule was articulated in *Anderson v. Charles*, 447 U.S. 404, 100 S. Ct. 2180, 65 L. Ed. 2d 222 (1980), and was addressed by the Washington Supreme Court in *Belgarde*, 110 Wn.2d

---

[2] The Fifth Amendment to the United States Constitution prohibits impeachment based on a defendant's exercise of silence where the defendant neither waives the right nor testifies at trial. *State v. Burke*, 163 Wn.2d 204, 217, 181 P.3d 1 (2008).

at 511-12. In particular, the State may question a defendant's failure to incorporate the events related at trial into the statement given police or it may challenge inconsistent assertions. *Belgarde*, 110 Wn.2d at 511. "When a defendant does not remain silent and instead talks to police, the state may comment on what he does *not* say." *State v. Clark*, 143 Wn.2d 731, 765, 24 P.3d 1006 (2001).

That is what happened here. White waived the right to remain silent and voluntarily spoke with law enforcement post-*Miranda*, never once responding with silence or a refusal to answer any questions. Indeed, White testified that he was "real honest about everything" during his postarrest conversations with Suarez. VRP (July 28, 2021) at 351. White testified that he "told [Suarez] everything he asked." *Id.* at 358. Pointing out the discrepancies between White's postarrest story to police and his testimony at trial did not amount to a comment on his constitutional right to silence. Rather, the exchange during cross-examination about the inconsistent stories constituted an attempt at impeachment.

White relies on *Doyle* and *Belgarde*, but his full participation in postarrest communication with police is notably different from the facts of those cases. In *Doyle*, the two defendants made no postarrest statements about their involvement in the crime and later testified at trial that they had been framed. *Doyle*, 426 U.S. at 613. The Supreme Court determined that where the defendants had clearly remained silent postarrest, it was fundamentally unfair for the State to ask at trial why they had not told police they were being framed upon arrest. *Id.* at 618-19.

Similarly, in *Belgarde*, the defendant refused to speak with law enforcement immediately upon his arrest. 110 Wn.2d at 510. The Washington Supreme Court held that the State violated Belgarde's constitutional right to silence by emphasizing during closing argument Belgarde's refusal to speak to law enforcement. In contrast, here, White voluntarily spoke with law

enforcement and answered all of their questions. Under these facts, the State's references during trial to inconsistencies between White's account to Suarez and his trial testimony were constitutionally valid impeachment.

## II. DNA COLLECTION FEE

White also argues, and the State agrees, that the trial court erred by imposing a $100 DNA collection fee. We agree and remand for correction of the judgment and sentence.

A DNA collection fee is mandatory "unless the state has previously collected the offender's DNA as a result of a prior conviction." RCW 43.43.7541; *State v. Ramirez*, 191 Wn.2d 732, 747, 426 P.3d 714 (2018). Here, the State concedes that White had previously been convicted of a Washington felony offense and that the DNA fee should be stricken. Based on the State's concession, we assume that White's DNA was previously collected. We accept the State's concession and remand to the trial court to strike the DNA collection fee.

We affirm but remand for the trial court to strike the DNA collection fee from White's judgment and sentence.

No. 56211-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Glasgow, CJ_____
Glasgow, C.J.

We concur:

_Maxa, J._____
Maxa, J.

_Lee, J._____
Lee, J.