UNITED STATES of America ex rel. Michael T. SMITH, Petitioner,

v.

Honorable Richard J. CADAGIN, as Judge of the Seventh Judicial Circuit, Morgan County, Illinois; Robert Burdine, Chief Probation Officer of Morgan County, IL, Respondents.

No. 87–3391.

United States District Court, C.D. Illinois, Springfield Division.

Feb. 28, 1989.

Timothy M. Gabrielsen, State Appellate Defender, Springfield, Ill., for petitioner.

Neil F. Hartigan, Atty. Gen., Douglas K. Smith, Asst. Atty. Gen., Springfield, Ill., for respondents.

## OPINION

RICHARD MILLS, District Judge:

Habeas Corpus.

Writ to issue.

Michael T. Smith has petitioned this Court—pursuant to 28 U.S.C. § 2254—to issue a writ of Habeas Corpus ordering Respondents to free him from the custody of the fine, restitution, costs and probation to which Petitioner was sentenced.

Petitioner claims that during cross-examination of Petitioner, the prosecutor violated the rule of *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and thereby violated his constitutional rights.

For the following reasons, the petition must be allowed.

### (A) *Facts*

The state has asked this Court to rely entirely upon the Illinois appellate court's version of the facts in ruling upon this request, citing *United States ex rel. Green v. Greer*, 667 F.2d 585 (7th Cir.1981). Indeed, 28 U.S.C. § 2254(d) requires that this Court presume that the state court's fact-findings are correct (unless, for instance, this Court determines upon examining the record that the state court's version is not supported by the record. § 2254(d)(8)). The parties have not submitted the entire record, although Petitioner cites in his memorandum to segments of the record which are at odds with some of the broad statements made in the appellate court's opinion. But no matter—this Court has given the appellate court opinion the full benefit of the statutory presumption. The following facts are therefore culled entirely from the state appellate court opinion affirming Petitioner's conviction. *People v. Smith*, 157 Ill.App.3d 465, 109 Ill.Dec. 647, 510 N.E.2d 515 (4th Dist.1987).

The Petitioner and Alaina Turnbaugh, the "victim," met up one night in December of 1985 in the parking lot of a Jacksonville, Illinois, tavern. Petitioner, a correctional officer at a nearby correctional facility, knew Alaina as the girlfriend of a fellow guard. Petitioner saw Alaina as she sat in her car with the dome light on. He approached her car, yanked open the door, and told Alaina that she was under arrest for drug trafficking.

Petitioner and Alaina tell different stories from this point. Petitioner claims that his motive in pulling open the door was merely to pull a prank. He claims that Alaina over-reacted to his practical joke, lost her temper and attacked him. Petitioner denies having been armed during the incident, and also denies ever having struck Alaina. Instead, he claims that as she attacked him, Alaina slipped and fell, and as he helped her to her feet her blouse ripped.

Alaina testified, conversely, that after Petitioner yanked her car door open, he pointed a gun at her head and began pulling her from her car, demanding that she come with him. Alaina asked Petitioner for identification, and he showed her his identification card from the correctional center. Alaina claims Petitioner placed the gun in her mouth and threatened to kill her

when she tried to escape; she struggled and broke loose as two cars pulled into the tavern parking lot.

Whichever of these versions is closer to the truth, the remainder of the story is uncontradicted. Alaina called the police from the tavern. When they arrived, they noted that her nose and mouth were bleeding and her blouse was torn; she was also crying and upset. The drivers of the two cars which pulled into the lot "testified to witnessing the struggle," 157 Ill.App.3d at 470, 109 Ill.Dec. at 650, 510 N.E.2d at 518 (the appellate court opinion does not indicate that either witness could identify the aggressor in the struggle, nor whether either witness saw the beginning of the fight). The next day the police took Alaina to the correctional facility where Petitioner worked. She identified Petitioner as her attacker from his employee identification card. A warrant was then issued for Petitioner's arrest, and a search warrant was issued for his home and car.

Petitioner was arrested and given his *Miranda* warnings while at work. As he was being escorted to the waiting squad car, one officer asked if Petitioner understood the charges. Petitioner answered that "it was a situation that got out of hand." He was then asked if he knew the "victim," and he answered, "she was a girlfriend of Marty Savage, another guard." The police then told Petitioner of the search warrant; he responded that no evidence was to be found in his car, but he told the officers where they might find his gun and the clothes he wore the night of the incident.

Petitioner was charged with intimidation (Ill.Rev.Stat. ch. 38, ¶ 12–6(a)(1) (1985)), unlawful restraint (Ill.Rev.Stat. ch. 38, ¶ 10–3(a) (1985)), and two counts of armed violence (Ill.Rev.Stat. ch. 38, ¶ 33A–2 (1985)).

At trial, Petitioner took the stand in his own defense, where he first related his version of the incident as set out above. On cross-examination, the prosecutor engaged Petitioner in the following colloquy:

[PROSECUTOR]: Is it true that you told the police officers when you got arrested that it got out of hand, the situation, right?

[DEFENDANT]: Yes.

[PROSECUTOR]: They didn't mention Alaina's name at that time, did they? You just assumed that, I take it? Is that right?

[DEFENDANT]: Right.

[PROSECUTOR]: You didn't say it was a practical joke?

[DEFENDANT]: No, not at that time, no.

[PROSECUTOR]: You said that it was Marty Savage's girlfriend. You didn't say it was a practical joke then, did you? You never mentioned a practical joke.

[DEFENDANT]: No.

[PROSECUTOR]: And that was right when they arrested you, is that not correct?

[DEFENDANT]: Right.

[PROSECUTOR]: When you got in the car and they asked you about the search warrant and the gun that was used. Why did you say that it was—that's why it was in the car that night.

Defense counsel objected, claiming that the questioning violated *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The prosecutor argued, however, that Petitioner had not remained absolutely silent after receiving his *Miranda* warnings, and so waived reliance on *Doyle*. The trial court agreed with the prosecutor and overruled the objection. The prosecutor once more mentioned Petitioner's post-*Miranda* silence in closing argument.[1]

---

1. The sole deviation this Court will make from the facts set forth in the appellate court's opinion concerns the closing argument. The appellate court opinion merely states that "[a]t closing argument, the prosecutor argued that there was no corroboration of the defendant's testimony that the incident was a practical joke." 157 Ill.App.3d at 468, 109 Ill.Dec. at 649, 510 N.E.2d at 517. The Petitioner, however, has submitted with his § 2254 materials the following excerpt from the trial transcript in which the prosecutor makes clear reference to Petitioner's post-*Miranda* silence:

And then, if what he's testified to is true, why would he say what he said to the police officers? Why would he say it was a situation two days after, less than two days after actual-

The jury returned a verdict in Petitioner's favor on the two armed violence counts, but found him guilty of intimidation and unlawful restraint. The Court sentenced him to 30 months' probation, and ordered him to pay a fine, restitution, and court costs totalling $2,000.

Petitioner appealed his conviction on the issue of the *Doyle* violation. The appellate court found that the prosecutor's questioning did constitute a *Doyle* violation, but that the error was harmless beyond a reasonable doubt in view of other evidence introduced at trial. *Smith,* 157 Ill.App.3d at 469, 109 Ill.Dec. at 650, 510 N.E.2d at 518. The appellate court therefore affirmed Petitioner's conviction. The Illinois Supreme Court denied appeal, 116 Ill.2d 572, 113 Ill.Dec. 313, 515 N.E.2d 122, and so Petitioner filed the instant petition with this Court. The state concedes that Petitioner has exhausted his state judicial remedies with respect to the *Doyle* violation.

In support of this petition, Smith argues here, as he did before the Illinois appellate court, that a *Doyle* violation occurred and that the error was not harmless, and that the constitutional error thereby warrants setting his conviction aside. In response, the state first argues that the prosecutor's questioning did not constitute a *Doyle* violation, and that even if such a violation occurred it was harmless beyond a reasonable doubt, based upon the facts set forth in the Illinois appellate court's opinion. Finally, the state argues that even if Petitioner's "joke" defense had been believed by the jury, facts introduced were still sufficient to warrant conviction. The state therefore requests that this Court deny Petitioner's request.

■ Although the state does not raise the point, this Court has considered whether Petitioner is entitled to relief under § 2254 based upon the sentence he received. Section 2241(c) only allows a federal court to grant relief under § 2254 to a petitioner "in custody;" this requirement is

jurisdictional. *Jackson v. Carlson,* 707 F.2d 943, 946 (7th Cir.), *cert. denied,* 464 U.S. 861, 104 S.Ct. 189, 78 L.Ed.2d 167 (1983). Petitioner here is not, nor has he been, incarcerated. Still, he meets the "in custody" requirement because at the time he filed his petition in this Court he was under a sentence of probation. The Supreme Court held, in *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), that a person on parole was "in custody" within the meaning of § 2241(c); in *Drollinger v. Milligan,* 552 F.2d 1220, 1224 (7th Cir.1977), the court analogized to the *Jones* ruling and held that a person on probation, as with a person on parole, is "in custody" for purposes of the federal habeas corpus statute. Petitioner's sentence is therefore no obstacle to the relief he seeks.

### (B) *Evidence Supporting Conviction*

■ We shall begin with the state's final argument opposing this petition—that is, that Petitioner's "joke" defense would not have entitled Petitioner to an acquittal, anyway. The state argues that "[i]t is not a defense that a criminal act was committed in sport or in jest. ... Even if meant as a 'joke,' the acts of restraining and threatening a person without legal authority are still criminal conduct."

This argument has no merit. The Illinois intimidation statute under which Petitioner was convicted, Ill.Rev.Stat. ch. 38, ¶ 12-6(a)(1), provides that "[a] person commits intimidation when, *with intent to cause another to perform or to omit the performance of any act,* he communicates to another a threat to perform without lawful authority ... the following [act]: (1) Inflict physical harm on the person threatened or any other person or on property" (emphasis added). If Petitioner had intended only a practical joke, he would have had no intent to force Alaina "to perform or to omit the performance of any act." *See People v. Haybron,* 153 Ill.App.3d 906, 106 Ill.Dec. 662, 506 N.E.2d 369 (3d Dist.1987).

ly the incident itself, why would he say it's just a situation that got out of hand. He didn't say joke.
(Vol. IX, R. 25).

Hence, *Doyle* violations occurred both during cross-examination of Petitioner and during the prosecution's closing argument.

■ Likewise, Petitioner was convicted under Ill.Rev.Stat. ch. 38, ¶ 10–3(a), which provides that "[a] person commits the offense of unlawful restraint when he knowingly without legal authority detains another." Petitioner's story was that Alaina over-reacted to his practical joke, and that any "detaining" done by him was in self-defense. If the jury believed Petitioner's version of events, then it could well have found that to the extent he detained Alaina, it was not "without legal authority." *See People v. Hunt*, 150 Ill.App.3d 874, 104 Ill.Dec. 201, 502 N.E.2d 464 (2d Dist.1986).

### (C) *Doyle v. Ohio*

■ Hence we arrive at the more meaty issues—whether the cross-examination violated *Doyle v. Ohio* and, if so, whether that violation was merely harmless error.

In *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), our Supreme Court held that the prosecution's use, during cross-examination or closing argument, of a defendant's silence after receiving his *Miranda* warnings deprives the defendant of his due process rights. The Court stated that "every post-arrest silence is insolubly ambiguous because of what the state is required to advise the person arrested." *Id.* at 617, 96 S.Ct. at 2244. Further, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Id.* at 618, 96 S.Ct. at 2245. Hence, a defendant's post-*Miranda* silence cannot be used by the prosecution to refute the defendant's version of events told by the defendant for the first time from the witness stand.

The *Doyle* holding has subsequently been clarified. The rule applies only to silence after the defendant has received his *Miranda* warnings—not merely after arrest—because the fundamental unfairness results from the Government's use of silence after having assured the defendant that he could remain silent with impunity. *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982); *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65

L.Ed.2d 86 (1980). Furthermore, *Doyle* only applies to the defendant's silence, and does not limit prosecutorial use of prior inconsistent statements made by the defendant. *Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980). The Court has also held that not all prosecutorial misconduct of this sort results in a *Doyle* violation. In *Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987), the Court found no *Doyle* violation where the trial court immediately sustained an objection to the prosecutor's attempt to impeach the defendant based upon his post-*Miranda* silence, because the prosecutor was never able to complete the inquiry forbidden by *Doyle*. Finally, even in the face of a *Doyle* violation, reversal or a new trial is not required if the court, applying the standard of *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), determines that the constitutional error is harmless beyond a reasonable doubt. *Phelps v. Duckworth*, 772 F.2d 1410, 1413 (7th Cir.), *cert. denied*, 474 U.S. 1011, 106 S.Ct. 541, 88 L.Ed.2d 471 (1985).

### (1) Doyle Violation

Against this backdrop, the state makes the rather incredible assertion that no *Doyle* violation occurred here. The state argues that the prosecutor's questioning merely inquired into statements made by Petitioner which were arguably inconsistent with his testimony at trial, and that therefore the questioning was within the bounds set forth in *Anderson v. Charles* as cross-examination on prior inconsistent statements.

The Illinois appellate court, in reviewing Petitioner's conviction, found that the questioning violated *Doyle* because it did not concern prior statements which were manifestly inconsistent with his trial testimony. *Smith*, 157 Ill.App.3d at 469, 109 Ill.Dec. at 650, 510 N.E.2d at 518 (citations omitted). The state argues that the "manifest inconsistency" standard is inappropriate, and instead asks that we adopt the "arguable inconsistency" standard used in *United States v. Makhlouta*, 790 F.2d 1400 (9th Cir.1986), *Grieco v. Hall*, 641 F.2d 1029 (1st

Cir.1981), and *United States v. Schultz,* 698 F.2d 365 (8th Cir.1983).

In this Court's view, the standard to be applied does not really matter because the prosecutor's questioning clearly inquired into Petitioner's silence, and not into any differences between what he said to the arresting officers and what he said on the stand. After asking Petitioner about the statements actually made to arresting officers, the prosecutor asked: "You didn't say it was a practical joke?" Petitioner answered, "No, not at that time, no." The prosecutor then continued: "You said that it was Marty Savage's girlfriend. You didn't say it was a practical joke then, did you? You never mentioned a practical joke." And again Petitioner answered, "No." *Smith,* 157 Ill.App.3d at 467–68, 109 Ill.Dec. at 649, 510 N.E.2d at 517. The prosecutor apparently did not dispute the veracity of what Petitioner told arresting officers; his cross-examination instead focused on why Petitioner did not say more, having said something. This questioning does not fall under the aegis of *Anderson v. Charles.* To the contrary, *Anderson* clearly only applies to cross-examination as to the substance of statements made, and not as to why the defendant did not elaborate upon those statements at the time he made them.

Furthermore, to the extent this colloquy can be read as inquiring into actual statements made by Petitioner, those statements are not even arguably inconsistent with the tale Petitioner told at trial. Petitioner's story of a practical joke gone awry is wholly consistent with his statements to the officers that the situation had gotten out of hand, that he was personally acquainted with Alaina, and that he told police where they might find his gun and clothing. Hence, even taking the best of the state's argument, it must fail.

The state has, for good reason, made no attempt to support the position taken by the prosecutor and the trial judge—that is, that "because the defendant had not remained absolutely silent subsequent to being given *Miranda* warnings, *Doyle* was inapplicable." *Smith,* 157 Ill.App.3d at 468, 109 Ill.Dec. at 649, 510 N.E.2d at 517. As *Anderson* makes clear, a defendant only gives up his right to remain silent to the extent he makes post-*Miranda* statements which are inconsistent with his testimony at trial. To the extent a defendant chooses to remain silent, the state's assurance that the silence will not be used against him requires under *Doyle* that that silence not be raised during impeachment at trial. The state's assurances are not vitiated merely because the defendant does not take full advantage of them. *See United States v. Samples,* 713 F.2d 298, 304 (7th Cir.1983).

Finally, it should be noted that this case does not fall under the rule of *Greer v. Miller,* where the court found no *Doyle* violation when the trial court immediately cut off the prosecutor's improper questioning. Here, the trial judge explicitly rejected a *Doyle* objection, and did not provide a curative instruction. Hence, the prosecutor here was able to fully complete his *Doyle* questioning.

(2) Harmless Error

■ The Illinois appellate court, although finding that a *Doyle* violation had been committed, found that in light of all the evidence introduced at trial, "defendant's failure to explain his conviction as a prank was not damaging and we are satisfied beyond a reasonable doubt that the error did not contribute to his conviction." *Smith,* 157 Ill.App.3d at 470, 109 Ill.Dec. at 650, 510 N.E.2d at 518. The state asks that this Court apply the statutory presumption of correctness to the state court's facts, and follow the Illinois appellate court in finding that the error committed here was harmless.

This Court has already indicated that it has given the Illinois appellate court the full benefit of the § 2254(d) presumption. Nevertheless, this Court must part company with the Illinois appellate court on this point. We have independently interpreted the facts set forth in *People v. Smith, see Sumner v. Mata,* 455 U.S. 591, 597, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982), and have determined that the error commit-

ted here was not harmless beyond a reasonable doubt.

Trial errors of constitutional magnitude do not require reversal if the Court determines that the errors are harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In applying this standard in the context of a *Doyle* violation, the following factors have been identified as relevant: "1. The use to which the prosecution puts the post-arrest silence. 2. Who elected to pursue the line of questioning. 3. The quantum of other evidence indicative of guilt. 4. The intensity and frequency of the reference. 5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions." *Phelps v. Duckworth,* 772 F.2d 1410, 1413 (7th Cir.), *cert. denied,* 474 U.S. 1011, 106 S.Ct. 541, 88 L.Ed.2d 471 (1985). Further, the Seventh Circuit has recently reiterated the guiding principles in determining whether constitutional errors are harmless beyond a reasonable doubt.

> ... [W]e must determine whether there is a reasonable possibility that the errors complained of might have contributed to the conviction. ... The inquiry, we have noted is whether absent the constitutionally-forbidden evidence, honest and fair-minded jurors might very well have brought in not-guilty verdicts. The fact that there was some incrimination or circumstantial evidence does not render the error harmless. Typically, we require other evidence of guilt to be overwhelming before concluding a constitutional error was harmless.

*United States ex rel. Savory v. Lane,* 832 F.2d 1011, 1019–20 (7th Cir.1987) (citations omitted).

Applying the *Phelps* factors mechanically to the present facts, this case falls decidedly on the "not harmless" side of the line. The prosecutor clearly used Petitioner's silence to discount his version of the facts; the prosecutor's premise was that if the story was true, Petitioner would have told it to the arresting officers. It is also clear that the prosecutor initiated the line of questioning. Although the prosecutor did not badger the Petitioner about his post-*Miranda* silence, he did highlight the silence in his cross-examination, and he also raised the point again in closing. Further, although defense counsel objected, the trial judge refused to give a curative instruction, let alone grant a mistrial, on the basis of the *Doyle* violation.

With respect to the quantum of other evidence indicating guilt, the Illinois appellate court found it sufficient to find the *Doyle* violation harmless, but this Court must disagree. The appellate court noted that Petitioner "initiated the incident," *Smith,* 157 Ill.App.3d at 470, 109 Ill.Dec. at 650, 510 N.E.2d at 518, but that does not settle which party escalated the incident, and the mere initiation of the incident is not sufficient to establish Petitioner's guilt of intimidation or unlawful restraint. The state court opinion notes that two witnesses saw the struggle; as we noted at the outset, though, neither witness saw which of the two parties caused the struggle. Two police officers testified as to Alaina's condition after the fight, but their testimony was equally consistent with Petitioner's story as it was with Alaina's. And although the appellate court opinion states that Petitioner "testified to other incidents quite damaging to his credibility," *id.*, the opinion never identifies these incidents; the incidents would have to be egregious indeed to so tilt the balance of this case as to overcome the prejudice caused by the prosecutor's improper questioning.

In the end, this case turned almost entirely upon which of two witnesses the jury believed, Petitioner or Alaina. All the other facts set forth in the appellate court's opinion could have supported either story. Hence, this is not a case where the other evidence of guilt is overwhelming, *Lane,* 832 F.2d at 1020, and so this Court cannot find the constitutional error to be harmless beyond a reasonable doubt. Instead, we find that "there is a reasonable possibility that the [*Doyle* violation] might have contributed to the conviction," *id.* at 1019, and so we find that this constitutional violation requires issuance of the writ Petitioner requests.

*Ergo,* for these reasons, the Petition for issuance of a Writ of Habeas Corpus is ALLOWED, and Respondents are hereby ORDERED to release Petitioner from the custody of probation, fine, restitution and costs, pursuant to his August 21, 1986 conviction, unless Petitioner is retried and reconvicted of these charges within 90 days of entry of this order.