902 F.2d 553
 Michael T. SMITH, Petitioner-Appellee,
v.
Honorable Richard J. CADAGIN, as Judge of the Seventh
Judicial Circuit, Morgan County, Illinois and
Robert Burdine, Chief Probation Officer
of Morgan County, Illinois,
Respondents-Appellants.
 No. 89-1666.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 7, 1989.
Decided May 14, 1990.
 
 Timothy M. Gabrielsen, States Attys., Appellate Service Com'n, Springfield, Ill., for petitioner-appellee.
 Douglas K. Smith, Asst. Atty. Gen., Criminal Appeals Div., Springfield, Ill., Timothy P. Olson, Office of the States Atty., Jacksonville, Ill., for respondents-appellants.
 Before FLAUM, RIPPLE, and MANION, Circuit Judges.
 RIPPLE, Circuit Judge.
 
 
 1
 On May 7, 1986, Michael Smith was convicted of intimidation and unlawful restraint in violation of Ill.Rev.Stat., ch. 38, paras. 12-6(a)(1) and 10-3(a). His conviction was affirmed on appeal, and the Illinois Supreme Court denied leave to appeal. Mr. Smith then filed a petition for habeas corpus relief in the United States District Court for the Central District of Illinois. On February 28, 1989, the district court granted the writ. 707 F.Supp. 387. The government filed a notice of appeal and moved to stay execution of the writ on March 27, 1989. The motion to stay was granted on April 10, 1989. We now reverse the judgment of the district court.
 
 
 2
 * FACTS
 
 
 3
 As the district court acknowledged, in a habeas corpus proceeding the factual determinations made by the state court are presumed to be correct. 28 U.S.C. Sec. 2254(d); see Sumner v. Mata, 449 U.S. 539, 545-47, 101 S.Ct. 764, 768-69, 66 L.Ed.2d 722 (1981). We look, therefore, to the facts as stated by the Illinois Appellate Court in People v. Smith, 157 Ill.App.3d 465, 109 Ill.Dec. 647, 648-49, 510 N.E.2d 515, 516-17[1] (1987).
 
 
 4
 At trial, Alaina Turnbaugh, the victim, testified that on December 11, 1985, after work at approximately 11 p.m., she stopped at the Country Market to purchase cigarettes, and then proceeded to the Regulator to meet some friends. Turnbaugh stated that she parked her car and then turned on the interior lights to check her makeup. While looking into the rearview mirror, Turnbaugh noticed a car parked behind her. Suddenly, her car door was yanked open and the defendant told Turnbaugh she was under arrest for drug trafficking. Turnbaugh claimed that the defendant pointed a gun at her head, grabbed her left arm pulling her out of the car, and demanded that she accompany him.
 
 
 5
 When Turnbaugh asked the defendant for some identification, the defendant showed an ID card which Turnbaugh recognized as a Jacksonville Correctional Center ID. Turnbaugh then attempted to escape from the defendant, but the defendant slapped her and threatened to kill her while placing the gun in her mouth. During the struggle, two cars pulled into the parking lot. After the second car pulled in, Turnbaugh broke away from the defendant and ran into the Regulator. The police were immediately contacted.
 
 
 6
 The next morning, Turnbaugh was taken to the Jacksonville Correctional Center to view employee identification cards. After viewing all of the prison ID's, Turnbaugh identified the defendant as her attacker. Thereafter, a warrant was issued for the defendant's arrest and a search warrant was issued for defendant's home and automobile.
 
 
 7
 Officer James Potter and Officer Richard Moss went to the Jacksonville Correctional Center to place the defendant under arrest. The defendant was placed under arrest, taken into custody, and given his Miranda warnings. As the officers escorted defendant to the squad car, Potter asked the defendant if he understood the charges. The defendant replied that "it was a situation that got out of hand." Potter then asked the defendant if he knew the girl, to which the defendant responded, "She was a girlfriend of Marty Savage, another guard."
 
 
 8
 After being informed of the search warrant, the defendant told the officers they would not find anything in his car, but surrendered the keys to his apartment telling the officers where to find the gun and clothes he wore on the night of the incident.
 
 
 9
 At trial, the defendant testified that he knew Turnbaugh and when he saw her seated in her car with the lights on, he decided to play a practical joke on her. The defendant stated that he believed Turnbaugh was taking drugs. The defendant further testified that Turnbaugh lost her temper, had to be subdued, and slipped and fell as she exited her car. The defendant maintained that he was not armed, and that he never struck the girl. The defendant claimed that Turnbaugh's blouse tore as he attempted to assist her after she fell to the ground.
 
 
 10
 During cross-examination, the following colloquy ensued:
 
 
 11
 "[PROSECUTOR]: Is it true that you told police officers when you got arrested that it got out of hand, the situation, right?
 
 
 12
 [DEFENDANT]: Yes.
 
 
 13
 [PROSECUTOR]: They didn't mention Alaina's name at that time, did they? You just assumed that, I take it? Is that right?
 
 
 14
 [DEFENDANT]: Right.
 
 
 15
 [PROSECUTOR]: You didn't say it was a practical joke?
 
 
 16
 [DEFENDANT]: No, not at that time, no.
 
 
 17
 [PROSECUTOR]: You said that it was Marty Savage's girl friend. You didn't say it was a practical joke then, did you? You never mentioned a practical joke.
 
 
 18
 [DEFENDANT]: No.
 
 
 19
 [PROSECUTOR]: And that was right when they arrested you, is that not correct?
 
 
 20
 [DEFENDANT]: Right.
 
 
 21
 [PROSECUTOR]: When you got in the car and they asked you about the search warrant and the gun that was used. Why did you say that it was--that's why it was in the car that night."
 
 
 22
 Defense counsel objected to this line of questioning claiming that the defendant had been given Miranda warnings and that any comment on defendant's silence violated Doyle v. Ohio (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91. The prosecution, however, maintained that because the defendant had not remained absolutely silent subsequent to being given Miranda warnings, Doyle was inapplicable. The court informed the prosecutor that the line of questioning was close to a Doyle violation, and instructed him to proceed on other points. The objection was overruled and no curative instruction was given.
 
 
 23
 At closing argument, the prosecutor argued that there was no corroboration of the defendant's testimony that the incident was a practical joke. The jury found the defendant guilty of intimidation and unlawful restraint and not guilty of two counts of armed violence.
 
 II
 EARLIER PROCEEDINGS
 A. State Courts
 
 24
 Mr. Smith appealed his conviction to the Appellate Court of Illinois, Fourth District. People v. Smith, 157 Ill.App.3d 465, 109 Ill.Dec. 647, 510 N.E.2d 515 (1987). The appellate court noted that Illinois courts require a showing of "manifest inconsistency" between the post-arrest statement and the trial statement before the prosecutor may inquire into post-arrest silence. Id., 109 Ill.Dec. at 650, 510 N.E.2d at 518. The court concluded that the statements made by Mr. Smith were not "manifestly inconsistent," and thus found that the prosecutor improperly commented on post-arrest, post-Miranda silence in violation of Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). Id.
 
 
 25
 The court nevertheless concluded that the Doyle error was harmless beyond a reasonable doubt. The other evidence of guilt, reasoned the court, was overwhelming: the defendant "admitted to initiating the incident," two independent witnesses testified about the struggle, and the police testified about Ms. Turnbaugh's dishevelled condition (bleeding mouth, torn blouse, and hysterical crying). The court thus affirmed the conviction. Id.
 
 
 26
 Mr. Smith then petitioned the Illinois Supreme Court for leave to appeal. The court denied this petition on October 7, 1987. 116 Ill.2d 572, 113 Ill.Dec. 313, 515 N.E.2d 122 (1987).
 
 B. District Court
 
 27
 Mr. Smith petitioned the United States District Court for the Central District of Illinois for a writ of habeas corpus. The district court agreed with the Illinois appellate court that the prosecutor committed Doyle error by inquiring into Mr. Smith's post-arrest silence. According to the district court, Mr. Smith's statements to the police following arrest were not inconsistent with his trial testimony. "Petitioner's story of a practical joke gone awry is wholly consistent with his statements to the officers that the situation had gotten out of hand...." United States ex rel. Smith v. Cadagin, 707 F.Supp. 387, 392 (C.D.Ill.1989).
 
 
 28
 The district court then decided that the Doyle error was not harmless because the questioning was used to discount Mr. Smith's version of the incident, the prosecutor initiated the inquiry, and the trial court did not give a curative instruction. Id. at 393. The district court concluded that the evidence of guilt was not sufficiently "egregious" to compensate for the prejudice to Mr. Smith caused by the inquiry. Id. Accordingly, the district court granted Mr. Smith's petition for a writ of habeas corpus.
 
 III
 ANALYSIS
 
 29
 The government argues on appeal that both the Illinois appeals court and the district court erred in characterizing the prosecutor's questions as commentary on Mr. Smith's post-arrest silence. Instead, the government contends that the questions were proper because Mr. Smith did not remain silent when he was arrested. We agree.
 
 
 30
 In Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the Supreme Court held that a prosecutor's use of a defendant's post-arrest, post-Miranda silence for impeachment violated due process. The defendants in Doyle were arrested during a narcotics transaction. They immediately were given Miranda warnings. At trial, they claimed that they were framed by the buyer of the narcotics. Id. at 612-13, 96 S.Ct. at 2242-43. The prosecutor extensively cross-examined one of the defendants regarding his failure to tell the arresting officers this story when he was apprehended.[2] The Supreme Court determined that such cross-examination violated the implicit guarantee of the Miranda warning that silence cannot be used against the defendant. The Court then concluded that commentary on such silence was constitutional error.
 
 
 31
 [W]hile it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.
 
 
 32
 Id. at 618, 96 S.Ct. at 2245.
 
 
 33
 Doyle forbids the government's exploitation of silence after the government has assured the defendant that he has the right to remain silent. As Judge Wood noted in United States v. Edwards, 885 F.2d 377 (7th Cir.1989), "The rule ... comes down to this: '[T]he state may not first implicitly warn the defendant that silence will not be used against him and then accost him at trial once he remains silent.' " Id. at 387 (quoting Dean v. Young, 777 F.2d 1239, 1241 (7th Cir.1985), cert. denied, 475 U.S. 1142, 106 S.Ct. 1794, 90 L.Ed.2d 339 (1986)). Supreme Court cases following Doyle have been careful to apply this constitutional policy concern with precision. In Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), the Court held that pre-arrest silence may be used for impeachment. Unlike the situation in Doyle, "no governmental action induced [the defendant] to remain silent before arrest." Id. at 240, 100 S.Ct. at 2130. In Fletcher v. Weir, 455 U.S. 603, 605-06, 102 S.Ct. 1309, 1311-12, 71 L.Ed.2d 490 (1982) (per curiam), statements made following arrest but before receiving Miranda warnings were held admissible. The Court explicitly noted that "[i]n Jenkins, as in other post-Doyle cases, we have consistently explained Doyle as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him." Id. at 606, 102 S.Ct. at 1311.
 
 
 34
 The courts that already have reviewed this case have focused principally on Anderson v. Charles, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980) (per curiam). Charles emphasizes this same concern with exploitation of government-induced silence. In that case, the defendant told one story after receiving Miranda warnings and a different story during his testimony at trial. In holding that Doyle did not apply to questioning about prior inconsistent statements, the Court reasoned:
 
 
 35
 Doyle bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But Doyle does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.
 
 
 36
 Id. at 408, 100 S.Ct. at 2182 (emphasis supplied). In most cases, the inconsistency between a post-arrest statement and trial testimony is easily apparent, and the application of Charles' holding is straightforward.[3] There are, however, more difficult cases where the inconsistency between the post-arrest statement and the trial testimony is more subtle. Judge Easterbrook stated it well when he wrote: "Certainly there is a fine line between impeachment by showing a curious incompleteness in a suspect's story and impeachment from silence." Phelps v. Duckworth, 772 F.2d 1410, 1421 (7th Cir.) (en banc) (Easterbrook, J., concurring), cert. denied, 474 U.S. 1011, 106 S.Ct. 541, 88 L.Ed.2d 471 (1985). Here, special care must be taken in analyzing the particular circumstances of the case. On one hand, as Charles teaches, Doyle does not require a "formalistic understanding of 'silence.' " 447 U.S. at 409, 100 S.Ct. at 2182. However, as Judge Pell noted while sitting with our colleagues in the First Circuit:
 
 
 37
 This does not mean that any time a defendant makes any post-arrest statement the door is open to full cross-examination about the defendant's failure to recount the exculpatory trial story earlier. Miranda protections apply equally to refusals to answer specific questions.
 
 
 38
 Grieco v. Hall, 641 F.2d 1029, 1034 (1st Cir.1981).
 
 
 39
 In dealing with these difficult cases, the federal courts that have addressed the issue have found guidance in Charles' articulation of what is forbidden by the holding in Doyle: the prosecutor's questions must not be "designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement." 447 U.S. at 409, 100 S.Ct. at 2182. Reliance on this underlying policy concern has produced among the circuits a uniform, pragmatic approach.[4] As Judge Pell wrote in Grieco,once a defendant makes post-arrest statements that may arguably be inconsistent with the trial story, inquiry into what was not said at arrest may be designed not "to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement.... Each of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version. But Doyle does not require any such formalistic understanding of silence...." Anderson v. Charles, supra, 100 S.Ct. at 2182.
 
 
 40
 641 F.2d at 1034 (emphasis supplied).[5] This same approach was employed by the Eighth Circuit in United States v. Schultz, 698 F.2d 365 (8th Cir.1983). There, the defendant was arrested after picking up a package of money left by a bank manager who had received a threatening phone call. After his arrest, the defendant admitted picking up the package, but denied making the phone call. At trial, the defendant testified that he was in the area to meet a friend. The prosecutor cross-examined him concerning his earlier failure to mention that he was going to meet the friend. The defendant claimed that this cross-examination constituted Doyle error. The Eighth Circuit disagreed. "This is not a case ... in which the defendant was completely silent after his arrest.... Therefore, when he chose to testify at trial, he was subject to cross-examination with respect to his prior, arguably inconsistent statement concerning the same subject matter." Id. at 367 (citing Charles ) (emphasis supplied).
 
 
 41
 The same approach was employed in United States v. Makhlouta, 790 F.2d 1400 (9th Cir.1986), although with a significant refinement. There, in a post-arrest statement, the defendant admitted distributing cocaine and stated he had not anticipated being detected. At trial, however, the defendant claimed that he had been entrapped. Judge Wallace pointed out that, in Charles, the Supreme Court had noted that " '[a]s to the subject matter of his statements, the defendant has not remained silent at all.' " Id. at 1404 (quoting Charles, 447 U.S. at 408, 100 S.Ct. at 2182 (emphasis supplied)). Consequently,
 
 
 42
 Makhlouta's post-arrest statements meet the ... requirement of being arguably inconsistent with the defense of entrapment asserted at trial. Makhlouta's post-arrest statements address the subject matter of why he sold heroin. These statements do more than neglect to suggest the defense of entrapment. They in fact offer a single explanation of his criminal activity--that he sold heroin, even though he knew it was illegal, because "he didn't anticipate he would get caught"--that is arguably inconsistent with the entrapment defense since it is evidence of a criminal predisposition.
 
 
 43
 Id. (emphasis supplied). While we believe the Ninth Circuit's emphasis on the term "subject matter" is a helpful analytical tool, it must, of course, be used cautiously. Defined too broadly, as the government attempted to do in United States v. Casamento, 887 F.2d 1141, 1179-80 (2d Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990),[6] it loses its helpfulness. As Charles pointedly noted, the question must be designed not to draw meaning from silence, "but to elicit an explanation for a prior inconsistent statement." 447 U.S. at 409, 100 S.Ct. at 2182 (emphasis supplied). See United States v. Agee, 597 F.2d 350, 354 (3d Cir.1979) (pre-Charles case allowing cross-examination that did not "open new avenues of inquiry"). The defendant, by the degree of expansiveness of his post-arrest statement, defines the permissible subject matter of any later cross-examination.
 
 
 44
 In this case, Mr. Smith had characterized the event at the time of his arrest as one that had "got out of hand." At trial, he characterized it as a "practical joke." On cross-examination, the prosecutor twice asked the question: "You didn't say it was a practical joke?" In our view, this cross-examination did not violate the holding of Doyle. With respect to a characterization of his conduct, Mr. Smith was not silent following his arrest. He did not rely on the implicit guarantee of Miranda; rather, he voluntarily commented about his participation in the incident and quite gratuitously characterized the event as one that "got out of hand." At trial, he returned to the same "subject matter" (cf. Charles, 447 U.S. at 408, 100 S.Ct. at 2182; Makhlouta, 790 F.2d at 1404) and used another verbalization to characterize his acts--a "practical joke." While one might have substantial doubts as to the effectiveness of this sort of impeachment, an examination of the record[7] makes it clear that the prosecutor was attempting to suggest, however maladroitly, that, if the episode indeed had been a practical joke, the defendant would have used that explicit characterization rather than the more vague terminology he actually employed. The only silence that was the subject of commentary was the "formalistic" silence, cf. Charles, 447 U.S. at 409, 100 S.Ct. at 2182, inherent in the rendition of an incomplete or imprecise characterization by Mr. Smith. Mr. Smith's counsel remained free, on redirect, to clarify that, while Mr. Smith's word usage had been imprecise, he had intended to convey the same message.
 
 
 45
 The prosecutor's cross-examination was limited to the defendant's earlier description of the encounter and was not, consequently, an attempt to exploit the defendant's silence--the gravamen of the error condemned in Doyle. It was, in the phraseology employed by our colleagues in other circuits, an attempt to demonstrate an "arguable inconsistency" in the defendant's account. No constitutional error was committed. Consequently, the writ of habeas corpus should not have been issued.
 
 Conclusion
 
 46
 Accordingly, the judgment of the district court is reversed.[8]
 
 
 47
 REVERSED.
 
 
 
 [1]
 There is no allegation that the Illinois Appellate Court made incorrect factual findings or committed any other error that would call the findings of fact into dispute. 28 U.S.C. Sec. 2254(d)(1)-(8)
 
 
 [2]
 "Q. [By the prosecutor.] Mr. Beamer [the arresting officer] did arrive on the scene?
 A. [By Wood.] Yes, he did.
 Q. And I assume you told him all about what happened to you?
 ...
 A. No.
 Q. You didn't tell Mr. Beamer?
 ...
 A. No.
 Q. You didn't tell Mr. Beamer this guy put $1,300 in your car?
 ...
 A. No, sir.
 ...
 Q. Mr. Wood, if that is all you had to do with this and you are innocent, when Mr. Beamer arrived on the scene why didn't you tell him?"
 426 U.S. at 613-14, 96 S.Ct. at 2242-43.
 
 
 [3]
 In United States v. Casamento, 887 F.2d 1141, 1179-80 (2d Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990), the Second Circuit held that Doyle error had been committed. Defendant Mazzurco had admitted upon his arrest that he knew codefendant Alfano and that the two had contemplated buying a pizzeria. During his direct examination at trial, Mazzurco testified that he had engaged in the business of importing precious stones into the United States. On cross-examination, the prosecutor asked Mazzurco whether, at the time of his arrest, he told the FBI agents that he was "dealing precious stones with Mr. Alfano?" The Second Circuit rejected the government's claim that the examination was permissible because Mazzurco had elected to speak about his relationship with Alfano. The court held that the statements were not inconsistent because it is "logically consistent that Mazzurco could have known Alfano and considered buying a pizzeria with him and, concurrently, could have been in the business of importing precious stones." Id. at 1179
 
 
 [4]
 The Sixth Circuit similarly has made it clear--albeit in a somewhat different situation--that concern with the exploitation of silence is the factor that must govern our application of Doyle. In United States v. Crowder, 719 F.2d 166 (6th Cir.1983), cert. denied, 466 U.S. 974, 104 S.Ct. 2352, 80 L.Ed.2d 825 (1984), the court permitted cross-examination of a defendant with respect to an earlier utterance although there was not even an arguably inconsistent statement. As long as there was no exploitation of silence, there was no violation of Doyle. The defendant testified on cross-examination that he had told an FBI agent that he did not want to discuss the matter and would stand by his previous statements to the state police. On appeal, he argued that, because this statement was not inconsistent with a previous statement, the prosecutor's questions fell outside of Charles. Id. at 170-72. The Sixth Circuit rejected this argument:
 This argument relies on a reading of Anderson v. Charles which is too restrictive. While there was a prior inconsistent statement in that case, it merely furnished the occasion for questioning the defendant. There is no indication that the Court limited its holding to situations involving prior inconsistent statements. What Anderson v. Charles teaches is that the Doyle rule has no application unless the defendant has remained silent and could be considered to have done so in reliance on the implied assurances of the Miranda warnings. Here there was no silence and the prosecutor never implied that Crowder's testimony was recently fabricated.
 Id. at 172.
 
 
 [5]
 We note that the state appellate court applied the Illinois rule, which requires the post-arrest statement to be "manifestly inconsistent" with the trial testimony before allowing the prosecutor to question the defendant regarding the inconsistency. People v. Smith, 157 Ill.App.3d 465, 109 Ill.Dec. 647, 650, 510 N.E.2d 515, 518 (1987); see also People v. Beller, 74 Ill.2d 514, 25 Ill.Dec. 383, 386-87, 386 N.E.2d 857, 860-61 (1979); People v. McMullin, 138 Ill.App.3d 872, 93 Ill.Dec. 311, 315, 486 N.E.2d 412, 416 (1985). This rule is an Illinois evidentiary rule that antedates Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). See McMullin, 93 Ill.Dec. at 314-15, 486 N.E.2d at 415-16
 
 
 [6]
 In Casamento, the government suggested that mention of one business transaction with a person permitted inquiry as to why the defendant had not mentioned other aspects of his relationship to the person. See supra note 3
 
 
 [7]
 See Charles, 447 U.S. at 408, 100 S.Ct. at 2182 (cross-examination to be evaluated as a whole and not artificially parsed); United States v. Ochoa-Sanchez, 676 F.2d 1283, 1287 (9th Cir.), cert. denied, 459 U.S. 911, 103 S.Ct. 219, 74 L.Ed.2d 174 (1982) (same)
 
 
 [8]
 Because we find that there was no violation of the federal constitution, we need not address the state's harmless error contention