**Nylon VICK, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.**

No. 91–1304.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1991.

Decided Dec. 26, 1991.

Thomas F. Meeks, Little Rock, Ark., argued, for appellant.

Olan W. Reeves, Little Rock, Ark., argued, for appellee.

Before LAY, Chief Judge, BRIGHT and HENLEY, Senior Circuit Judges.

**1000**

HENLEY, Senior Circuit Judge.

Nylon Vick appeals from an order of the district court dismissing his habeas corpus petition filed pursuant to 28 U.S.C. § 2254. We reverse and remand.

Vick was convicted of two counts of rape and one count of kidnapping and sentenced to 140 years imprisonment. At trial Ms. Smith testified that on June 22, 1988 she was selling books door-to-door and knocked on Vick's door. Vick appeared at the door and invited her in. After she entered the house and began her presentation, Vick excused himself and reappeared a few seconds later with a gun. Smith then testified that over the course of two days Vick forced her to take drugs and have intercourse. After some of these episodes, Smith testified that Vick forced her to take baths. She also testified that she had accompanied Vick to restaurants, a bank and a service station, and that several persons had come to Vick's house to purchase and consume drugs. Smith stated at one point that she fled to the street, but that Vick pulled her back into the house. On June 24 Smith escaped and went to one of Vick's neighbors, who telephoned the police. Smith testified that the police took her to a hospital for a medical examination.

The state presented three witnesses, who testified that they saw Vick and Smith struggling on the street and Vick dragging Smith, who was screaming, back into his house. Another witness testified she saw Vick force Smith into a truck.

Vick's version of the events varied greatly from Smith's testimony. Vick testified that he saw Smith walking down the street and honked at her. Smith told him she liked to get "high" and asked him if he had any drugs. Vick testified that Smith came back to his house, performed a "strip-tease," and told him she would exchange sex for money. Vick admitted that over two days he gave her drugs, but stated he did not have intercourse because Smith was having her menstrual period. Vick acknowledged the struggle on the street, but testified he pulled Smith back into his house because she had stolen money from him. According to Vick, Smith apologized for taking the money and stayed because she wanted more drugs.

During Vick's cross-examination, the following occurred:

Q: ... You turned yourself into the police department, right?

A: That's right.

Q: And I'm sure when you turned in, you told them all this, right?

A: No, I didn't tell them anything.

Q: You didn't tell them a thing, right?

A: No, sir.

Q: Why not?

A: They didn't ask me.

Q: You think that's something they've got to ask you?

A: Well, I understand that they [were] looking for me. They told me ...

Q: They didn't ask you if you wanted to make a statement?

A: No.

Q: They didn't.

A: My lawyer had already warned me that I didn't have to make one unless I wanted to.

Q: Pardon me?

A: My lawyer had informed me that I didn't have to make one unless I wanted to. Of course, they didn't ask me to make a statement anyway.

Q: They didn't even ask you, huh?

A: No. The attorney came to me. I answered the questions that he asked me.

Q: Didn't you sign a rights form and that kind of thing?

A: Correct.

Q: And you refused to make a statement?

A: That's right.

Q: Okay, so you refused to make a statement.

A: That's right.

Q: Okay. Knowing that this—what you're telling the jury here today is in your mind totally—

Mr. Massie: Your Honor, I'm going to object.

The court: That's going to be sustained.

Vick's counsel did not move for a mistrial, nor request a curative instruction.

Vick's sister, Ann Chun, also testified on his behalf. Chun stated that she and her husband came over to Vick's house and Vick introduced Smith to them. After about twenty minutes, Vick and her husband went outside and she was alone with Smith for about five or six minutes. Chun testified that they talked and that Smith was friendly and did not appear to be tense.

During closing argument the prosecutor told the jury Vick's story was "incredible," while Smith's testimony was "believable." The prosecutor also mentioned that medical evidence of rape was unnecessary, and suggested in this case it would be inconclusive because Vick had forced Smith to take baths, which would wash out any semen.

On direct appeal Vick argued that the prosecutor violated *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). In *Doyle* the Supreme Court held that a prosecutor may not "impeach a defendant's exculpatory story, told for the first time at trial, by cross-examining the defendant about his failure to have told the story after receiving *Miranda* warnings at the time of his arrest." *Id.* at 611, 96 S.Ct. at 2241 (footnote omitted). The state supreme court disagreed. *Vick v. State*, 299 Ark. 25, 770 S.W.2d 653 (1989). The court held it would not reach the merits of the *Doyle* claim "because Vick received all the relief from the trial court that he requested," noting Vick's objection was sustained and Vick had not requested a mistrial. *Id.* at 26, 770 S.W.2d at 654.

Vick then filed a pro se petition for post-conviction relief pursuant to Ark.Crim.P.R. 37. *Vick v. State*, 301 Ark. 296, 783 S.W.2d 365 (1990). Vick argued that counsel was ineffective in permitting the prosecutor to make repeated references to his silence by failing to earlier object and in failing to request a mistrial. The state supreme court disagreed, finding that even if counsel had been deficient in failing to object or request a mistrial, his performance had not affected the outcome of the trial. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The court assumed that the prosecutor's questions were error under *Doyle*, but concluded that the error was harmless in light of the overwhelming evidence of guilt. 301 Ark. at 301, 783 S.W.2d at 367.

Vick also asserted that counsel was ineffective in failing to cross-examine Smith about her testimony that Vick had forced her to take baths after the rapes. Vick alleged that he had informed counsel that his water had been shut off and that counsel failed to obtain the water company records supporting his claim, which thereby precluded cross-examination concerning the baths. Vick argued that if it had been proven that Smith had lied about the baths, her entire credibility would have been affected. The state court again disagreed, finding that even if proven that Smith had not been "forced to take baths, it is very unlikely that that fact alone would cast doubt on the verdicts since there was clear testimony that the petitioner held the victim and raped her." *Id.* at 300, 783 S.W.2d at 366. The court refused to review Vick's allegations concerning the lack of medical evidence, characterizing it as a claim of prosecutorial misconduct that should have been raised on direct appeal.

Vick then filed the instant habeas petition in district court. The district court concluded that although the prosecutor erred in posing the questions concerning Vick's silence, the error was not "so egregious that it fatally infected the entire trial, rendering it fundamentally unfair and denying Mr. Vick due process." The court noted the brief questioning was halted by the objection raised by petitioner's counsel and the prosecutor did not thereafter return to this line of questioning, and that the "impact of the prosecutor's misdirected questions" was "lessened by the ample evidence to support the convictions." The district court also found Vick's ineffective assistance claims without merit, finding that any error in failing to cross-examine Smith concerning the baths or obtain the medical report did not result in prejudice in that Smith's testimony of the rapes and kidnapping was "detailed and convincing."

On appeal Vick first argues that the district court erred in reviewing his *Doyle* claim under the fundamental fairness standard. Rather, Vick maintains that because the court found that the prosecutor's questions were error, the court should have applied the harmless error standard, which requires "the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). In *Bass v. Nix*, 909 F.2d 297, 305 (8th Cir. 1990) (quotations omitted), this court held "[t]he key factors in determining whether a *Doyle* violation is harmless ... are whether the government made repeated *Doyle* violations, whether any curative effort was made by the trial court, whether the defendant's exculpatory evidence is transparently frivolous, and whether the other evidence of the defendant's guilt is otherwise overwhelming." Vick argues that the error was not harmless, asserting that the prosecutor asked eleven impermissible questions, the court failed to give a curative instruction, that Vick's story was credible, and there was no other evidence of guilt.

◼ In its brief, the state argues that the harmless error standard is inapplicable because there was no *Doyle* violation. The state relies on *Greer v. Miller*, 483 U.S. 756, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987). In *Greer*, the Supreme Court held that where the trial court sustained an objection "to the only question that touched upon Miller's post-arrest silence[,] [n]o further questioning or argument with respect to Miller's silence occurred, and the court specifically advised the jury that it should disregard any questions to which an objection was sustained[,]" there was no *Doyle* violation. *Id.* at 764, 107 S.Ct. at 3108 (footnote omitted). The court explained that "[t]he fact of Miller's postarrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference, and thus no *Doyle* violation occurred in this case." *Id.* at 764–65, 107 S.Ct. at 3108 (footnote omitted). The Court, however, went on to consider whether the "prosecutor's attempt to violate the rule of *Doyle* by asking an improper question in the presence of the jury ... so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process[,]" and found it did not. *Id.* at 765, 107 S.Ct. at 3109 (quotation omitted).[1] However, at oral argument the state retreated and stated there was a *Doyle* violation, but that it was harmless.[2] The state, however, did not precisely identify when the violation occurred.

◼ We begin our analysis by noting that the Supreme Court has " 'consistently explained *Doyle* as a case where the Government had induced silence by implicitly assuring the defendant that his silence would not be used against him.' " *United States v. Butler*, 924 F.2d 1124, 1129 (D.C.Cir.) (quoting *Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982) (per curiam)), *cert. denied*, —— U.S. ——, 112 S.Ct. 205, 116

---

1. In *Greer*, the Court explained that the "*Chapman* harmless-error standard is more demanding than the 'fundamental fairness' inquiry of the Due Process Clause." 483 U.S. at 765 n. 6, 107 S.Ct. at 3108 n. 6.

2. At oral argument the state first suggested that the *Doyle* claim was not properly before this court because Vick's pro se habeas petition had characterized the claim as one of prosecutorial misconduct. However, when this court reminded the state that pro se pleadings must be given a liberal construction, the state conceded that the *Doyle* claim was properly before this court.
    We note that at no time before the district court or this court has the state suggested that review of the *Doyle* claim is procedurally barred. At oral argument the state noted that although the state supreme court refused to review the merits of the *Doyle* claim on direct appeal, it did so in the context of reviewing Vick's ineffective assistance of counsel claim raised in his Rule 37 petition. This court has suggested that review of a claim in the context of an ineffectiveness assistance claim does not necessarily constitute review of the substantive claim. *See Waterbury v. Nix*, 935 F.2d 943, 945 n. 3 (8th Cir.1991) (per curiam) (reviewing Iowa law). However, "[b]ecause the state did not raise the [possibility of a] procedural default in the district court or on appeal," a federal court may consider the procedural defense waived and review the merits of a habeas claim. *Travis v. Lockhart*, 925 F.2d 1095, 1097 (8th Cir.1991).

L.Ed.2d 164 (1991). In *Doyle* the Court stated

> while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

426 U.S. at 618, 96 S.Ct. at 2245 (footnote omitted).

"Supreme Court cases following *Doyle* have been careful to apply this constitutional policy concern with precision." *Smith v. Cadagin,* 902 F.2d 553, 556 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 177, 112 L.Ed.2d 141 (1990). Thus, in *Jenkins v. Anderson,* 447 U.S. 231, 240, 100 S.Ct. 2124, 2130, 65 L.Ed.2d 86 (1980), the Court held that *Doyle* was inapplicable to pre-arrest silence, explaining "no governmental action induced petitioner to remain silent before arrest." *Fletcher v. Weir* underscored "[t]he critical importance of the implied promise that is conveyed to the arrested person by the *Miranda* warnings...." *Wainwright v. Greenfield,* 474 U.S. 284, 290, 106 S.Ct. 634, 638, 88 L.Ed.2d 623 (1986). In *Fletcher,* the Court held that impeachment by post-arrest pre-*Miranda* silence did not violate *Doyle,* rejecting the argument that "arrest, by itself, is governmental action which implicitly induces a defendant to remain silent." 455 U.S. at 606, 102 S.Ct. at 1311 (quotation omit-

ted). *See also Wainwright v. Greenfield,* 474 U.S. at 295, 106 S.Ct. at 641 (state may not use post-*Miranda* silence as evidence of sanity); *Anderson v. Charles,* 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980) (*Doyle* inapplicable to impeachment with prior inconsistent statement following *Miranda* warnings in that "[s]uch questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent").

It is therefore clear that "the receipt of *Miranda* warnings is determinative of the constitutional issue." *United States v. Massey,* 687 F.2d 1348, 1353 (10th Cir. 1982). In this case, although Vick stated he had consulted an attorney and signed a rights form, on the record before this court it is unclear when Vick received *Miranda* warnings. *See Grancorvitz v. Franklin,* 890 F.2d 34, 43 (7th Cir.1989) (silence resulting from attorney's advice "does not automatically transform silence into constitutionally protected silence"), *cert. denied,* 495 U.S. 959, 110 S.Ct. 2566, 109 L.Ed.2d 749 (1990); [3] *United States v. Disbrow,* 768 F.2d 976, 980 (8th Cir.) (no evidence indicating defendant received *Miranda* warnings before arriving at police station; rather it appeared warnings were given at the time defendant was booked at jail and, if so, no *Doyle* violation resulted from questions regarding silence at time of arrest at station), *cert. denied,* 474 U.S. 1023, 106 S.Ct. 577, 88 L.Ed.2d 560 (1985).[4] Because "special care must be taken in analyzing the particular circumstances" of a *Doyle* claim,

---

3. Our quotation of the above language in *Grancorvitz v. Franklin* does not mean that we necessarily endorse the Seventh Circuit's analysis of a *Doyle* claim. We note that in *Brecht v. Abrahamson,* 944 F.2d 1363, 1375–76 (7th Cir.1991), the Seventh Circuit declined to adopt the harmless-error standard of *Bass v. Nix* in a collateral review of a state-court conviction.

4. In *Anderson v. Charles,* the appellate court bifurcated cross-examination into pre- and post-*Miranda* questions and found *Doyle* error as to the post-*Miranda* questions. The Supreme Court reversed, noting that the cross-examination could not be "bifurcated so neatly." 447 U.S. at 408, 100 S.Ct. at 2182. The Court found that the colloquy "taken as a whole" did not refer to the defendant's right to remain silent. The Court explained that "[t]he questions were

not designed to draw meaning from silence, but to elicit an explanation for a prior inconsistent statement." *Id.* at 409, 100 S.Ct. at 2182. In *Bass v. Nix,* the state attempted to rely on *Anderson* by arguing that "any references to post-arrest silence were cured by concurrent references to pre-arrest silence." 909 F.2d at 302. This court distinguished *Anderson,* noting that unlike *Anderson* the prosecutor in *Bass* "did not quickly resolve by explicit reference to silence prior to arrest any impermissible inferences from a *Doyle* violation." *Id.* (quotation omitted). The court also found the state's argument without support in the record, noting that the "prosecutor deliberately or recklessly chose to invite the jury to draw adverse inferences from Bass' post-arrest silence by means of improper comment." *Id.* at 305 n. 15.

*Smith v. Cadagin,* 902 F.2d at 557, we believe a remand for an evidentiary hearing concerning the timing of the *Miranda* warnings is necessary. *See Massey,* 687 F.2d at 1353 (remand appropriate because "record does not reveal at what point in time, if ever, Massey was given [*Miranda*] warnings").

As suggested by the state a remand would be unnecessary if we assumed error but found it harmless in light of the overwhelming evidence of guilt. *See Disbrow,* 768 F.2d at 980. At this time we are unwilling to do so. We remind the state that under *Bass* the quantity of evidence supporting the verdict is but one factor in a harmless error review. Another important factor is whether there are repeated *Doyle* violations. *Bass,* 909 F.2d at 305. We, however, do not agree that the evidence of guilt was overwhelming. There was little, if any, testimonial or physical evidence corroborating Smith's story. Although neighbors testified to a struggle on the street, Vick acknowledged the struggle, but offered an explanation different from that of Smith's. As the district court observed, "the jury was presented with two versions of the incidents, and chose to believe the version presented by the prosecution." At oral argument even the state conceded that Vick's testimony was "pretty credible." In similar circumstances, it has been held that "where the case comes down to a one-on-one situation, *i.e.,* the word of the defendant against the word of the key prosecution witness, and there is no corroboration on either side, the importance of the defendant's credibility becomes so significant that prosecutorial error attacking that credibility cannot be considered harmless

beyond a reasonable doubt." *Velarde v. Shulsen,* 757 F.2d 1093, 1095 (10th Cir. 1985). *See also Mahorney v. Wallman,* 917 F.2d 469, 474 (10th Cir.1990) (where "jury was basically presented with two relatively credible, competing stories related by the complaining witness and the accused, neither of which was conclusively confirmed or disproportionately discredited by extrinsic evidence," court unwilling to find improper prosecutorial comments harmless).

On remand we also believe that the court should conduct an evidentiary hearing concerning Vick's allegations of ineffective assistance of counsel. The district court failed to conduct a hearing because the court assumed defective performance, but found any such performance had not resulted in prejudice. As to Smith's testimony that Vick had forced her to take baths, we cannot agree with the district court's conclusion that even if Smith had lied about the baths, that lie would not have affected the outcome of the trial.[5] As discussed above, the outcome was dependent upon the jury's evaluation of the witnesses' credibility. The court should also conduct a hearing as to Vick's allegations of ineffective assistance in failing to obtain the medical report.[6]

Accordingly, the judgment of the district court is reversed and remanded for further proceedings consistent with this opinion.[7]

---

5. Because neither the state post-conviction court nor the district court conducted an evidentiary hearing, there is no record support for Vick's allegation that the water to his home had been turned off. The state suggests that even if Vick's allegation were true, Smith had not necessarily lied about the baths, suggesting Vick in fact had access to a source of water. There may be some support for the state's position in the trial transcript. Vick's sister testified that during her visit to Vick's home, Vick "asked [her] husband if he would go out with him to repair

something about the water." In addition, on direct-examination, Vick stated that on the morning that Smith left she told him she was going to take a bath and go to work.

6. The state argues that Vick's claim concerning the medical report was procedurally barred because he failed to present the claim to the state courts. We agree with the district court that Vick sufficiently presented the claim.

7. Appointed counsel has ably represented Vick in this appeal. Subject to consideration of any

objection from counsel, we suggest that the district court may wish to appoint the same counsel to represent Vick in the proceedings on remand.